## COMMONWEALTH v. CITY OF CHESTER.

ERROR TO THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued January 9, 1889—Decided February 4, 1889.

1. Section 42, act of April 29, 1844, P. L. 501, requiring the treasurer of each county, city, and borough, on the payment of interest to holders of its corporate loans, to assess a state tax upon the nominal value thereof and to deduct and return the same to the state treasurer, is not repealed by § 4, act of April 30, 1864, P. L. 218.
2. A settlement made by the auditor general and state treasurer of an account against a city for taxes upon its municipal loans, purporting to be made under the act of June 30, 1885, P. L. 193, is not invalid, for the rate according to which the tax is assessed is fixed by said act, although the settlement is properly made under § 42 of the act of 1844.
3. If the return of a city to the auditor general do not show that any of its municipal bonds are held by non-residents of the state, it may fairly be implied, with reference to their liability to taxation, that the bonds returned are all held by resident owners.
4. Commonwealth v. Martin, 107 Pa. 185, and Commonwealth v. Lehigh V. R. Co., 104 Pa. 106, followed: other questions, raised by the record in this case, considered and determined in Commonwealth v. Del. Div. Canal Co., ante, 594.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 31 May Term 1888, Sup. Ct.; court below, No. 191 March Term 1887, C. P.

On December 13, 1886, the auditor general and state treasurer of Pennsylvania, upon a return made under protest by the

treasurer of the city of Chester, made the following settlement of account for taxes:

CHESTER CITY, DELAWARE COUNTY,

In account with the COMMONWEALTH OF PENNSYLVANIA, Dr.

For tax on loans, per act of June 30, 1885, for the year ending first Monday of November, 1886, as per report herewith filed.

Loans, $406,500; tax, 3 mills, . . . . . . . . . . . . $1,219.50
Deduct 5 per cent. treasurer's commission:
   on $1,000.50, . . . . . . . . . . . . . . . . . $50,00
   on $219.50, . . . . . . . . . . . . . . . . . . 2.20——52.20

Due commonwealth, . . . . . . . . . . . . . . . . . . $1,167.30

The city thus charged appealed from said settlement specifying objections thereto which were in substance as follows:

1. The tax claimed in said settlement is void for want of an assessment, and because it is contrary to article IX., § 1, of the constitution of Pennsylvania, which provides that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the same; because no assessment of the said bonds is provided by law, and no notice or opportunity is given to the bondholders to be heard, either before or after the tax is paid, concerning its validity.

2. The report made by the treasurer of the city of Chester upon which the settlement appealed from of December 18. 1886, purports to have been made, was made under protest in the words and figures following, to wit: . . . . . The city of Chester claims that this return does not constitute a valid assessment of the bonds therein set forth, and that the same furnishes no legal basis for the collection of a tax upon said loans, by requiring appellant to withhold said tax from the interest payable to the resident holders thereof, as claimed in the settlement of account herein appealed from.

3. Neither the act of June 30, 1885, nor any other act, authorizes the auditor general and state treasurer to settle an account against the appellant, the city of Chester, for said tax on loans in the said settlement of account of June 9, 1885.

Decision of Court below.

4. If any tax on said loans of the city of Chester can lawfully be charged by the commonwealth to the appellant, under any act of assembly, the amount of said tax cannot exceed the rate fixed by the act of June 30, 1885, to wit: at the rate of three mills on every dollar of the interest paid on said bonds.

5. The interest on said loans of the city of Chester varies from four to six per centum, and the same mature at different times. By reason of the difference in the rate of interest, and the time of maturity of said loans, the market value thereof varies.

6. The commonwealth claims that all of the loans of the city of Chester held by residents of the state are taxable to said resident bondholders at the nominal or face value of said bonds, without regard to the variations in the real value of the respective series of bonds arising from difference in the rates of interest payable thereon, and the time of maturity thereof.

7. Appellant further says, that the act of June 30, 1885, and any other act, in so far as they require appellant to retain from the interest payable to resident holders of bonds of the city of Chester, the aforesaid state tax on the nominal value thereof are void, because, the said legislation and attempted taxation are repugnant to article XIV., § 1, of the constitution of the United States, which provides: " . . . . Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Appellant further says, that the said requirement is a taking of the property of said bondholders without "due process of law," and denies to said bondholders "the equal protection of the laws;" that said acts of assembly were forthwith avoided and made null and void by the adoption of the said fourteenth amendment to the constitution of the United States, and by virtue of article V. of said constitution of the United States.

The cause was submitted to the decision of the court, without trial by jury, under the act of April 22, 1874, P. L. 109, and after the hearing was concluded, the court, SIMONTON, P. J., filed the following decision.

This case was tried without a jury by agreement of parties, as provided by the act of April 22, 1874.

It originated in an account settled December 13, 1886, by the auditor general and state treasurer, against the defendant for "tax on loans, per act of June 30, 1885, for year ending first Monday of November, 1886," from which settlement defendant entered an appeal to this court as authorized by the act of 1811 relative to public accounts.

We find the facts to be at follows :

1. Defendant is an incorporated city in Pennsylvania; it has a valid indebtedness of $406,500, evidenced by registered bonds. Of these, bonds to the nominal amount of $55,500 bear interest at the rate of six per centum per annum; $231,000 at the rate of five per centum, and $120,000 at the rate of four per centum.

2. The actual market value of the bonds bearing interest at the rate of six per centum per annum was, during the year included in the settlement, sixteen per centum more than the actual value of those bearing interest at four per centum, and three per centum more than those bearing interest at five per centum.

3. [The report of the bonded indebtedness of the city, defendant, made by its treasurer contained the following : " I Henry Hinckson, treasurer of the city of Chester, have made this report on the bonded indebtedness of the city of Chester, and have filled up the blanks herein at the request of the auditor general of the state of Pennsylvania, and by advice of counsel I hereby protest against being required to make this return. And I further protest that I have no power to make any assessment of the said bonds for taxation, and I further state that I have made no assessment thereof and have not been authorized by law so to do. I further protest that the tax sought to be levied upon the bonds issued by the city of Chester through me, by means of this report and a settlement made by the auditor general and state treasurer thereon against me for said tax, is void under the constitution of the United States and of the state of Pennsylvania for want of valid assessment and for inequality." And we find as a fact that he made no assessment.] [1]

The settlement in this case is stated therein to be made under the act of June 30, 1885. That act makes " all mort-

Decision of Court below.

gages, money owing by solvent debtors, whether by . . . . .
bond or judgment, . . . . . all public loans or stocks what-
ever, . . . . . and all other moneyed capital in the hands of in-
dividual citizens of the state, . . . . . taxable for state purposes,
at the rate of three mills on the dollar of the value thereof annu-
ally." This language is undoubtedly comprehensive enough
to include municipal bonds; but there is nothing to be found
in this act which authorizes the tax to be imposed in the man-
ner attempted in this case.

The fourth section makes it the duty of " the treasurer of
each private corporation," to assess the tax imposed by the act
upon the nominal value of the evidences of indebtedness of
the corporation, and to retain the tax out of interest paid;
but this applies to " private corporations " only; and there is
no reference whatever anywhere to municipal corporations,
except in the proviso to § 6, which directs " that the taxable
person shall not include " in the return he is required to make
of the " aggregate amount of all matters owned by him, made
taxable by this act" upon the blank to be furnished to him by
the local assessor, the obligations of public . . . . . corpora-
tions, the tax on which is required by law to be collected from
the holder of such obligations and paid into the state treasury
by the corporation." This proviso excludes the presumption
that the tax on municipal bonds is to be assessed and collected
by the local assessors and collectors, but it does not aid us in
determining how it is to be assessed and collected.

It is contended, however, on behalf of the commonwealth,
that the mode of assessment and collection is prescribed by
§ 42 of the act of 1844, P. L. 501, the language of which is as
follows : " That if any county shall pay into the state treasury
its quota of tax levied on its said adjusted valuation, fifteen
days prior to the first day of August, in any year, such county
shall be entitled to an abatement of five per cent on the amount
so paid; and any state tax remaining unpaid by any individual
or corporation after said tax is due and payable by said county
to the commonwealth, shall bear an interest of six per cent,
and be a lien on the estate on which it is charged, till fully
paid and satisfied. And that it shall be the duty of the
treasurer of each county, incorporated city, district and borough
of this commonwealth, on the payment of any dividend or

Decision of Court below.

interest, to any holder or agent claiming the same, on any scrip, bond or certificate of indebtedness issued by said incorporated city, district and borough aforesaid, to assess the tax herein made and provided for state purposes, upon the nominal value of each and every said evidence of debt; said tax to be deducted by the said treasurer, on the payment of any interest or dividend aforesaid, and the same shall be held by him, until paid over to the state treasurer; and the said treasurer shall be subject to the same penalties and liabilities now prescribed by existing laws in relation to taxes on bank dividends."

Defendant contends that if this be the act and section under which the tax is claimed and settlement made, it cannot be sustained, because the assessment provided for is to be upon the nominal and not upon the real value of the evidences of indebtedness, and that therefore the taxes are not uniform as they are required to be by the constitution.

We think this objection is well founded for the reasons stated in the opinion recently filed in Commonwealth v. Delaware Division Canal Company, No. 170 September Term 1887, Dauphin county Common Pleas, which, without repeating, we here adopt.

It is undoubtedly true that the want of uniformity shown by the facts proved in that case is much more glaring than that which could be inferred, if the facts found in this case were alone in view; but the constitutionality of an act of assembly cannot be determined by, nor depend upon, the facts proved in a particular case. If the inevitable, necessary effect of administering a taxing act in the manner in which the legislature directs it to be administered, be to produce want of uniformity in the taxes, the act is unconstitutional and cannot be applied to any case. " The constitutional validity of a law is to be tested, not by what has been done under it, but by what may, by its authority, be done:" Stuart v. Palmer, 74 N. Y. 183 (30 Amer. R. 289).

We need not stop to discuss the objection that the assessment is not valid without a valuation. It is alluded to in the opinion above cited, and it is, at any rate, involved in the objection of want of uniformity; for, if the assessment at the nominal value result in uniformity of taxes, this result would show that it was made on a substantially correct valuation; and if the

Decision of Court below.

necessary result is want of uniformity in the taxes, they cannot be sustained even if such an assessment be considered a valuation.

Defendant contends, further, that, if this tax be claimed under said act of 1844, it is illegal, and the act is invalid, because it does not provide for notice to, and right of appeal by the bondholder, and that no notice or opportunity for appeal was actually given.

It is conceded that this is a tax upon the bondholder, and that it is payable by him, in the first instance, out of the interest due upon his bonds. He has, therefore, the same rights that other tax-payers have with respect to notice and opportunity to appeal.

We do not consider it necessary to enter into any elaborate discussion to show that a tax-payer has the constitutional right to notice and opportunity of appeal, before he becomes finally bound for the tax. We shall merely refer to a few cases and opinions of judges, on this subject, out of a multitude that might be cited. The principle that, as was said by AGNEW, J., in Philadelphia v. Miller, 49 Pa. 448, "Notice or at least the means of knowledge is an essential element in every just proceeding which affects rights of persons or property," is fundamental, and is applicable to tax proceedings by its terms, because they do affect rights and persons and property.

In tax proceedings "it must be a matter of the utmost importance to the person assessed that he should have some opportunity to be heard before the charge is fully established against him; . . . . . and we should say that notice of proceedings in such cases, and an opportunity for a hearing of some description, were matters of constitutional right:" Cooley on Taxation, 265–6. "Many provisions in our statutes, regulating the imposition of taxes, must be considered directory merely. Some are doubtless conditions, such as those which are intended to secure an equality of taxation or burdens among the citizens; that is, that the citizen may know for what he is taxed; know his valuation, and have notice of the time and place of appeal:" Insurance Co. v. Yard, 17 Pa. 338.

In Stuart v. Palmer, supra, a law authorizing an assessment without providing for notice and right of appeal was held unconstitutional and void. In this case the subject is fully

discussed and many authorities are cited. See also Thomas v. Gain, 35 Mich. 155 (24 Amer. R. 535) ; County of San Mateo v. Southern Pacific R. Co., 13 Fed. R. 722.

The nature and form of the notice is very much in the discretion of the legislature, but, as in the act of 1844, there is no notice whatever, of any kind, provided for, it must, in our opinion, for that reason, be declared unconstitutional. We do not, in thus deciding, overlook the fact that this section of this act has, apparently, had the sanction of the courts in several cases. We do not understand, however, that this precise question has ever been authoritatively considered or decided, at least since the adoption of the constitution of 1874.

What we have said thus far has been said upon the assumption that § 42 of the act of 1844 is still in force. But we are by no means certain that this is the case.

The "Act imposing additional taxes for state purposes, and to abolish the revenue board," approved April 30, 1864, P. L. 219, contains the following : [§ 4, quoted at length.]

This section, it will be seen, requires the treasurers of municipalities to make return of the indebtedness and rate of interest, as of the first day of January in each year ; and requires the auditor general to " fix the state tax due and unpaid," on the receipt of said returns, and to transmit notice of the amount to the treasurers, who are to deduct the said state tax on payment of any interest on debts due by the municipality. The intention of this would seem to be that with the amount of the indebtedness before him and the rate of interest which it bears, the auditor general is to " fix the state tax due and unpaid," that is, to value and assess the evidences of indebtedness, and transmit notice of the amount to the treasurers, that they may know what sum to deduct when paying interest. To say the least, the language used would bear this construction ; and, if this be its meaning, it is plainly inconsistent with § 42, of the act of 1844, which directs the treasurer to assess the tax on the nominal value of the evidences of indebtedness.

But, even if this be the true construction of the act of 1864, which we do not decide, it will not help the case of the commonwealth, for in that event the proceedings in this case are fatally defective. No report was made, as of the first of January, in any year, to the auditor general ; nor did he, so far as

has been shown, fix the amount of the tax and transmit the required notice to the treasurer, and therefore the tax has not been assessed as required by the act. And even if all this had been done, the fatal objection of want of notice to the bond-holders and opportunity to appeal, would still remain. There is also the additional objection to both of these acts that they require the assessment of the tax upon, and its retention from the interest on, all the evidences of indebtedness of the munic-ipalities, without regard to whether they are owned by resi-dents of the state or non-residents, although it has been determined by the Supreme Court of the United States that non-resident bondholders cannot be taxed: State Tax on For-eign-held Bonds, 15 Wal. 300.

The constitution, besides requiring all taxes to be uniform, ordains, also, that they "shall be levied and collected under general laws." We have grave doubts whether both § 42 of the act of 1844 and § 4 of the act of 1864 are not repugnant to this clause. We know not 'what it means, nor to what it can be applied, unless it be that all taxes on the same class of sub-jects must be levied and collected under the same general laws; that the taxes on part of a given class of subjects can-not be levied and collected under a law which applies to them only, and prescribes a mode in which they are to be levied and collected, different from that in which the taxes on the remain-ing subjects of the same class are to be levied and collected under the general laws. If this be so, and if municipal loans be a part of the class of subjects described in § 1 of the act of 1885 as "all mortgages, money owing by solvent debtors, whether by promissory note, penal or single. bill, bond or judg-ment, . . . . . and all public loans and stocks whatsoever . . . . . and all other moneyed capital in the hands of individ-ual citizens;" then it would seem that, as the taxes on these municipal loans are not levied and collected under the general laws, there is a violation of the mandate of the constitution in the attempt to levy and collect them under these special laws.

The constitution forbids the legislature to "pass any local or special law . . . . . regulating the affairs of counties, cities, townships, wards, boroughs or school districts." Several cases have arisen calling for a construction of this clause, and it has been shown, in deciding them, that a law which affects part

of a class only is a special law. Thus it was said by PAXSON, J., in Wheeler v. Philadelphia, 77 Pa. 338, on page 351: "We do not think the classification of cities, as contained in the act of May 23, 1874, offends against any constitutional provision." "This construction does not open the door to special legislation. It permits legislation for classes, but not for persons or things of a class." To the same effect, Scowden's App., 96 Pa. 422; and McCarthy v. Commonwealth, 110 Pa. 243.

The constitution of New Jersey contains the same inhibition as to regulation of affairs of counties, etc., and the same view of what constitutes special legislation has been taken by the Court of Errors and Appeals of that state. Thus in State v. State Board of Assessors, 48 N. J. L., it is said: "Interdicted local or special laws are those that rest on a false or deficient classification. Their vice is that they do not embrace all of the class to which they are naturally related." And in the same case, which is a tax case, the court say the same rule for determining what is general and what is special legislation must be applied to the constitutional mandate that property must be assessed for taxes under general laws. These considerations seem to make it at least doubtful whether these sections of the act of 1844, and the act of 1864, are not, both, unconstitutional and void, because they are special laws for levying and assessing taxes.

The case before us does not require us to resolve this doubt, and we therefore leave it as one of the least difficult of the many questions that present themselves whenever the revenue acts are presented for consideration. Almost the only thing that is certain about these tax laws as they now stand on our statute books, is that they are a rude undigested mass, most of them without form, and many of them void, in the legal sense of that word.

For the purposes of this case we have reached the following

CONCLUSIONS OF LAW:

1. That the settlement appealed from in this case is illegal and invalid, because the taxes claimed therein are not uniform as required by article IX., § 1, of the constitution.[2]

2. That said settlement is illegal and invalid, because the laws under which it was made and under which the taxes

embraced in it are claimed, do not provide for any notice to, or right of appeal by, the owners of the municipal loans, who are claimed to be liable for the tax.[3]

3. That defendant is entitled to judgment in its favor.[4]

Judgment is therefore directed to be entered in favor of defendant unless exception be filed within the time limited by law.

To the foregoing decision the commonwealth filed exceptions specifying that the court erred:

1. In the third finding of facts.[1]

2. In the first conclusion of law.[2]

3. In the second conclusion of law.[3]

4. In the third conclusion of law.[4]

5. In not directing judgment for the commonwealth.[5]

On May 18, 1888, the said exceptions were overruled and judgment directed to be entered in favor of the defendant. The commonwealth then took this writ assigning as error:

1–5. The overruling of said exceptions.[1 to 5]

*Mr. W. S. Kirkpatrick, Attorney General,* and *Mr. John F. Sanderson, Deputy Attorney General,* for the plaintiff in error:

1. The settlement against the city of Chester purports to be made under the act of June 30, 1885, P. L. 193. If this be intended to mean, by virtue of a method or machinery contained in the act of 1885, it is simply an erroneous recital, and does not affect the validity of the assessment, if it be properly made under some existing prior law. It may be considered as meaning and it really does mean, that the rate is fixed according to the three mills rate prescribed under the act referred to; and it is contended that the settlement was properly made under the provisions of § 42, act of April 29, 1844, P. L. 501, at the rate which is prescribed for all mortgages, loans, etc., in § 1, act of 1885.

2. The court refers to § 4, act of April 30, 1864, P. L. 219, as bearing the construction that it was intended to supply or supersede the provisions of § 42 of the act of 1844. The question of the relation of the act of 1864 to the act of 1844 has been very frequently before the courts. The very point

made here was made in Commonwealth v. Martin, 107 Pa. 185, and was directly before the court, fully argued, necessarily considered, and directly involved. We refer to pages 46 and 47 of the paper book of Martin, plaintiff in error in one writ, to show that the precise point was pressed. Had the position taken been correct, no judgment whatever could have been entered for the commonwealth. The tax in that case was settled according to the practice that had then long prevailed, and in precisely the same manner in which the tax was settled in the present case.

3. The municipality cannot make the objection, suggested by the court below, that these acts "require the assessment of tax upon and its retention from the interest of all evidences of indebtedness of municipalities, without regard to whether they are owned by residents of the state or non-residents," etc. Having returned the indebtedness without specially returning the amount held by non-residents, it does not and cannot fairly raise the question, in any shape, of the rights and relations of the municipalities, as the collectors to the state. The mere fact that the statutes impose generally a tax upon the bonds or indebtedness of municipal corporations, can only mean such taxes as they can legally collect: Commonwealth v. Standard Oil Co., 101 Pa. 119, 146.

For the argument of the counsel upon other points involved, see argument for the plaintiff in error in Commonwealth v. Del. Div. Canal Co., ante, 594.

*Mr. James W. M. Newlin*, for the defendant in error:

1. The tax is void, both under the federal and state constitutions, whether imposed under the act of 1885, or 1864, or 1844, for the same reasons that invalidated like taxation under the acts of June 7, 1879, and June 10, 1881. Commonwealth v. Lehigh V. R. Co., 104 Pa. 106, is not an authority for the proposition that a lawful municipal loan tax may be collected under § 42, act of 1844. The question was not before the court. Commonwealth v. Martin, 107 Pa. 185, cannot be reconciled with Commonwealth v. Lehigh V. R. Co., supra. Both cannot be right, and the Dauphin Common Pleas has finally seen this and reversed Commonwealth v. Martin.

2. The tax is void for want of a valid assessment. A very

little reflection will show that the legislature cannot, under the guise of prescribing a rule of valuation, give to any kind of property an artificial value for the purpose of taxation: Railroad v. Commissioners, 75 N. C. 475; Assessment Board v. Railroad Co., 59 Ala. 551; People v. Hastings, 29 Cal. 449; Nevada v. Estabrook, 3 Nev. 179; Danville v. Shelton, 76 Va. 325; Pickard v. Pullman etc. Co., 117 U. S. 43; People v. Lothrop, 3 Col. 456.

3. The tax is void for want of notice to the tax-payer, i. e., the bondholder, under any of the acts of 1885, 1864, or 1844. It is an attempt upon the part of the commonwealth to save trouble and expense, and also, in order to reach more bonds, to levy taxes upon A. by means of a so-called assessment to B. There is not even statutory notice to the bondholder; nothing but a legislative fiat directing the treasurer of the municipality to assess the bonds at their nominal value at any time during the fiscal year. On this point and the want of "due process of law," under amendment XIV., of the constitution of the United States, the following cases are referred to: Brown v. Hummel, 6 Pa. 90; Dartmouth College Case, 4 Wheat. 581; Stuart v. Palmer, 74 N. Y. 191 (30 Amer. R. 289); San Mateo Co. v. Railroad Co., 13 Fed. R. 722; Davidson v. New Orleans, 6 Otto 104; Hurtado v. California, 110 U. S. 516.

4. The act of June 30, 1885, attempts to invalidate the contract with the bond owners. The city agrees with its bondholder to pay four, five, or six per cent interest. When he comes to get his interest, he is asked to be satisfied with less, because the legislature has so willed. This interest money, as soon as it is set apart for the payment of the bondowner, becomes and is his individual property, and when it reaches him, then the commonwealth may tax it; but until it reaches him, and becomes a part of his estate, it cannot be taxed to him indirectly: Murray v. Charleston, 6 Otto 444; State Tax on Foreign-held Bonds, 15 Wal. 320.

5. The settlement should have been made against the treasurer of the city, and not against the municipality as such. On its face the settlement is made under the act of 1885, and the court has decided and the attorney general concedes that the claim is not under this statute. If the state is to fall back upon the act of 1864, it is obvious that none of the requirements of

that act have been complied with, either by the municipality or by the state. Consequently, the state is remitted to § 42, act of 1844. But the section referred to puts the duty of retaining the tax on the treasurer, as such, and not on the municipality in its corporate capacity. The settlement is therefore void, as made against the wrong party: Commonwealth v. Morrison, 1 Pears. 317. But, according to all the well-received rules of construction, the act of 1864 must be held to have repealed § 42 of the act of 1844. The act of 1864 provides a system for taxing municipal bonds at a time and in a manner different from that provided by the act of 1844. Both acts cannot possibly be pursued, and hence, as the whole ground is covered by each, the last act must prevail.

OPINION, MR. JUSTICE CLARK:

This is an appeal by the city of Chester from a settlement by the auditor general and state treasurer under the act of 1811 for taxes on municipal loans of the said city for the year ending first Monday of November, 1886. The case was tried without a jury under the act of April 22, 1874.

The defendant is an incorporated city of this state, having a bonded indebtedness outstanding, for the year stated, amounting to $406,500. The settlement purports to have been made pursuant to the act of June 30, 1885, P. L. 193. This is not wholly inaccurate, however, as the rate according to which the settlement was made is fixed by the act of 1885, but the settlement might more properly be said to have been made under the 42d section of the act of April 29, 1844, P. L. 501, from which the accounting officers derive their authority to act. This blunder is a matter of little importance, however, if the settlement was made under authority of law at the rate established by the act of 1885.

It is contended, in the first place, that this provision of the act of 1844 was repealed by the fourth section of the act of April 30, 1864, P. L. 218. The announcement of that conclusion by this court after the lapse of almost a quarter of a century, during all of which time state taxes on municipal loans have been regularly collected under the act of 1844, without question, would certainly be a surprise to the profession. In the very recent case of the Commonwealth v. Martin,

107 Pa. 185, however, the precise question was distinctly raised, and it was there plainly and explicitly ruled that the 42d section of the act of 1844 was not repealed by the act of 1864, but that the same remains in full force. To same effect is the reasoning of this court in Commonwealth v. Lehigh Valley R. Co., 104 Pa. 106, and of several of the cases there cited. That question may therefore be considered settled.

The return of the city of Chester does not show that any of the bonds were held by non-residents of the state; it may fairly be implied from the return that the bonds were all in the hands of resident owners. No question as to that can therefore arise.

The remaining questions raised upon this record are considered and determined in our opinion filed in the case of the Commonwealth v. Delaware Div. Can. Co., ante, 594.

> The judgment is reversed and judgment is now entered in favor of the commonwealth and against the defendant for one thousand three hundred and forty-one dollars and forty-five cents ($1,341.45), with interest at the rate of twelve per cent per annum from the 6th day of February, 1887, and costs.