## COMMONWEALTH v. LEHIGH VALLEY R. CO.

APPEALS BY PLAINTIFF AND DEFENDANT FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 6, 1889—Decided October 7, 1889.

[To be reported.]

1. Where an act is required to be done annually, and no day is designated either in express words or by implication, for the beginning of the year, it will ordinarily be presumed that the calendar year was intended.

2. Wherefore, a settlement of an account against a corporation for state taxes on corporate loans, under § 4, act of June 30, 1885, P. L. 193, made "for the year ending the first Monday of November, 1886," is

erroneous and should have been entered as made for the taxes of the calendar year 1886, the words quoted being stricken out as surplusage.

3. By the repealing clauses of the act of June 7, 1879, P. L. 112, and act of June 30, 1885, P. L. 193, the act of April 29, 1844, P. L. 497, and the act of April 22, 1846, P. L. 486, so far as they relate to the taxation of mortgages in the hands of corporations, are supplied and no longer in force.

4. Under § 4, of the act of June 30, 1885, bonds issued by a corporation of this state, doing business therein, and held by other corporations of the state in trust for persons "whose residence is unknown," are subject to the state tax of three mills imposed by said section.

5. And in a case where a corporation has wholly disregarded its duty and neglected to assess and collect the tax on such bonds, as required by § 4 of said act, and especially in the absence of any proof to the contrary, the bonds must be presumed to be owned by residents of Pennsylvania.

6. The provisions of § 4 of said act, requiring the treasurers of corporations to assess, deduct, and return to the state treasurer the three mills tax upon its corporate loans, are not repugnant to § 1, article IX. of the state constitution, providing that all taxes shall be uniform upon the same class of subjects.

7. Nor are said provisions repugnant to § 10 article I., article V., and § 1 article XIV. of the amendments of the constitution of the United States, respectively prohibiting the impairment of the obligations of contracts, and the deprivation of property without due process of law, etc.: Commonwealth v. Del. Div. Canal Co., 123 Pa. 594.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 34, 44 May Term 1889, Sup. Ct.; court below, No. 260 June Term 1887, C. P.

On January 21, 1887, upon report made, the auditor general and state treasurer settled and entered an account for taxes against the Lehigh Valley Railroad Company, as follows:

"For tax on scrip, bonds and certificates of indebtedness per section four of the act of June 30, 1885, for the year ending first Monday of November, 1886, as per report herewith filed:

Nominal value of scrip, bonds and certificates of indebtedness, owned by residents of Pennsylvania, $24,136,000

Tax, three mills,  .    .    .    .    . $72,408 00
Deduct treasurer's commission,  .    .    . 412 04
                                         ———————
Due commonwealth,  .    .    .    . $71,995.96 "

From the settlement thus made, the railroad company filed

an appeal, with specifications of objections, and the cause was then submitted to the decision of the court, without a jury, under the provisions of the act of April 22, 1874, P. L. 109.

On May 10, 1888, after hearing had, the court, SIMONTON, P. J., filed the following decision:

### FINDINGS OF FACT.

1. The Lehigh Valley Railroad Company is a corporation of the state of Pennsylvania, originally chartered under the name of the Delaware, Lehigh, Schuylkill & Susquehanna Railroad Company, by an act of assembly, approved April 21, 1846; and by a further act, approved January 7, 1853, its name was changed to the Lehigh Valley Railroad Company. Various supplementary acts of assembly have also been passed relating thereto. The charter of the company authorizes the creation of indebtedness and the issuance of bonds secured by mortgage.

2. In pursuance of authority conferred by its charter, the company has borrowed money and secured the same by mortgages to the amount of $25,458,000. Of the bonds included in, and secured by, said mortgage, there were held, November 1, 1886:

By individuals resident in Pennsylvania, as nearly as can be ascertained by the treasurer of the company, . . . . . . . $13,141,000

By individuals who were non-residents of Pennsylvania, . . . . . . . . 1,322,000

By persons whose residence is unknown—no direct evidence was offered save the fact that $6,000,000 were issued in London, England, and are not known to have returned to this country, 7,482,000

In trust for persons whose residence is unknown, (of which $209,000 were held by individual trustees, residents of Pennsylvania, $10,000 by non-resident trustees, $633,000 by corporations acting as trustees, and $78,000 by trustees whose residence is unknown,) . . . . . . 930,000

By corporations of the state of Pennsylvania owning the said bonds, . . . . . 2,583,000

3. The $25,458,000 of indebtedness of the company consists of three mortgages, viz.:

Decision of Court below.

A first mortgage of $5,000,000, bearing six per cent interest payable June 1st and December 1st of each year, the principal being due in 1898.

A second mortgage of $6,000,000, due in 1911, bearing interest at seven per cent, payable semi-annually upon the first days of March and September; and

A consolidated mortgage of $14,458,000, due in 1923, bearing six per cent interest, payable semi-annually upon the first days of June and December.

In November, 1886, the actual value of the bonds included in the first mortgage was 124, the actual value of the second mortgage, 141, and the actual value of the consolidated mortgage, 137.

4. The interest maturing upon the various mortgages, during the year ending with the first Monday of November, 1886, was paid in full by the company as it matured. The company did not deduct from said interest, and pay into the state treasury, the tax of three mills, as provided by the fourth section of the act of June 30, 1885.

5. The account settled by the auditor general charges tax upon all of the bonds of the company except $1,322,000, and is for the year ending with the first Monday of November, 1886.

6. The nominal or par value of bonds and mortgages issued by corporations is no reliable indication or measure of their actual value, which is usually either above or below, and very seldom the same as their par value; the actual value being dependent upon the value of the property mortgaged, the rate of interest, the date of maturity, and other conditions; some bonds upon which interest is regularly paid selling as low as 45 cents on the dollar, and others as high as 170. There are owned by residents of Pennsylvania millions of dollars worth of bonds and mortgages issued by foreign corporations not doing business in this state, the actual value of some of which bonds is above, and of others below, their nominal or par value.

For the reasons given in the opinions filed in Commonwealth v. Delaware Division Canal Company, 170 September Term 1887, and Commonwealth v. City of Chester, 191 March Term 1887, in Dauphin Common Pleas [see Commonwealth v. Del. Div. Canal Co., 123 Pa. 594, and Commonwealth v. Chester City, 123 Pa. 626], we find the following

Exceptions to Decision.

## CONCLUSIONS OF LAW.

1. That § 4 of the act of June 30, 1885, is repugnant to § 1 of article IX. of the constitution of Pennsylvania, which provides that all taxes shall be uniform within the territorial limits of the authority levying the same, and is, therefore, void.[a]

2. That the settlement appealed from in this case is illegal and invalid because the taxes claimed therein, under § 4 of the act of June 30, 1885, are not uniform, as required by section 1 of article IX. of the constitution.[b]

3. That said settlement is illegal and invalid because the laws, under which it was made, and under which the taxes embraced in it are claimed, do not provide for any notice to, or right of appeal by, the owners of the corporate loans, who are claimed to be liable for the taxes.[c]

4. That the defendant, in this case, has a legal right to interpose the defence of the unconstitutionality of the act and the invalidity of the settlement made under it.

5. That judgment must be entered in favor of defendant.[d]

We, therefore, direct judgment to be entered in favor of defendant unless exceptions be filed within the time limited by law.

To the foregoing decision, the defendant company filed exceptions, specifying that the court erred:

1. In not finding as a fact that "In the year 1883 the commissioners of every county in the commonwealth made returns to the revenue commissioners, as required by law, of the valuation of all 'mortgages, money owing by solvent debtors, etc.,' within their respective counties, which returns were duly considered by the revenue commissioners, who, on August 8, 1883, ascertained and determined the total amount of state tax due thereon, and made an allotment of the equitable quota of said state tax to each county, according to the amount of the valuation of taxable property therein, assigning to each county the quota of state tax to be raised therefrom. Duplicate records of this valuation were filed in the offices of the state treasurer and auditor general, respectively, and a copy of its valuation transmitted to each county. Upon this valuation the state tax in each county was assessed. With slight changes, the valuation so made and transmitted remained unaltered for the years

1884 and 1885, and no other valuation or assessment was made for these years. The rate of state tax for 1883, 1884, and 1885, upon mortgages and money owing by solvent debtors, was four mills, and at this rate the tax for the calendar year 1885 was assessed upon said valuation. With an unimportant exception, it has been paid in full to the commonwealth for that year. No deduction was made in consequence of the passage of the act of June 30, 1885." [f]

2. In not finding as a fact that of the $13,141,000 of bonds owned by residents of Pennsylvania, $2,515,000 were first mortgage bonds, and $6,233,000 were consolidated mortgage bonds, upon all of which the only interest paid during that portion of the calendar year 1886, embraced in the auditor general's tax settlement, was the semi-annual interest paid June 1, 1886, at which date not more than five months tax, under the act of 1885, could have accrued or been due upon the said bonds; that of said bonds held by residents of Pennsylvania, $4,393,000 were second mortgage bonds upon which the semi-annual payments of interest were made March 1st and September 1st, and that, at the date of the last payment of interest upon said bonds during that portion of the calendar year embraced in the auditor general's tax settlement, no more than eight months tax could have accrued or become due under the act of June 30, 1885.

3. In not finding as a conclusion of law that the three mills tax, imposed by the act of June 30, 1885, did not apply to any portion of the calendar year 1885, for which year a four mills tax, under the act of 1881, had been assessed and collected prior to the date of the passage of the said act of 1885. [g]

4. In not finding as a conclusion of law that defendant is not, in any event, liable for any tax upon any of its bonds except for that proportion of a year's tax which had accrued between the thirty-first day of December, 1885, and the date at which the last payment of interest is due and payable upon said bonds within the year ending with the first Monday of November, 1886. [1]

5. In not finding as a conclusion of law that the act of June 30, 1885, and particularly the fourth section thereof, is unconstitutional and void because in conflict with article V. of the amendments to the constitution of the United States,

which provides that "no person shall be . . . . . deprived of life, liberty or property, without due process of law." [2]

6. In not finding as a conclusion of law that the act of June 30, 1885, and particularly the fourth section thereof, is unconstitutional and void because in conflict with § 1 of article XIV. of the amendments to the constitution of the United States, which provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, or deny to any person within its jurisdiction the equal protection of the laws." [3]

7. In not finding as a conclusion of law that the act of June 30, 1885, impairs the obligation of contracts between the Lehigh Valley Railroad Company and its creditors, and is, therefore, void, because in conflict with § 10 of article I. of the constitution of the United States, which forbids any state to pass any law "impairing the obligation of contracts." [4]

8. In not finding as a conclusion of law that the act of June 30, 1885, impairs the obligation of the charter contract between the state of Pennsylvania and the Lehigh Valley Railroad Company, and is, for that reason, void, because in conflict with § 10 of article I. of the constitution of the United States. [5]

The commonwealth also filed exceptions, specifying that the court erred:

1–4. In the several conclusions of law. [a to d]

5. In directing judgment to be entered for the defendant.

6. In not directing judgment to be entered in favor of the commonwealth for the tax upon the corporate loans of defendant, shown, by paragraph 2 of the findings of fact, to be held by individuals resident in Pennsylvania and by residents (corporations and other trustees) in trust for persons whose residence is unknown. [e]

On April 20, 1889, the said exceptions having been argued, the court, SIMONTON, P. J., filed the following opinion:

This case was tried by the court, and an opinion was filed May 10, 1888, finding certain facts and directing judgment to be entered in favor of defendant, subject to the filing of excep-

tions within the time allowed by law, for the reasons which had been given in opinions previously filed in Commonwealth v. Delaware Division Canal Co., and in Commonwealth v. Chester City. Exceptions were filed in these cases which we overruled, and judgments were entered therein, for defendant. Thereupon the cases were removed to the Supreme Court, by writs of error on behalf of the commonwealth, where the judgments were reversed and judgments were entered in favor of the commonwealth: 123 Pa. 594, 626. Meanwhile, exceptions having been filed in this case by both plaintiff and defendant, we must now pass upon them in the light of the judgments of the Supreme Court in the cases above referred to.

In the above stated cases we found as a fact, as we did, also, in this case on the trial, that the bonds of corporations secured by mortgage, differ greatly in value, and that when taxed at a given rate on their nominal value there is great inequality in the resulting taxes; and from this we drew the conclusion of law that the taxes were not uniform. No exception has been any- where taken to this finding of fact, and, indeed, could not be, in view of the evidence; but the first and second exceptions of the commonwealth are to the effect that the conclusion of law drawn from this fact, that the resulting taxes are not uniform, is erroneous, and on the authority of the ruling of the Supreme Court, in the cases above referred to, we sustain these exceptions.

The third, fourth, and fifth exceptions of the commonwealth are sustained for the same reason.

Defendant's first exception is to the omission of the court to find certain facts, and its third to the failure of the court to base thereon the conclusions of law contained in said exception. It was decided in Commonwealth v. Lehigh Valley R. Co., 104 Pa. 89, that, as it was the duty of the local assessors, under § 17 of the act of June 7, 1879, P. L. 112, in taking the triennial assessment, to assess corporate loans in the hands of resident owners, it must be presumed under the evidence given in that case that they had performed that duty; and the same evidence having been given in this case as to the triennial assessment made in 1883, under the same act and its supplement of 1881, P. L. 99, which imposed a like duty on them, we are asked to draw the same conclusion here. The purpose for which the evidence is offered and the legal conclusion is asked to be drawn is

this : The settlement appealed from in this case, claims tax for one year from the first Monday of November, 1885, to the first Monday of November, 1886, but if tax was collected under the local assessment for the calendar year 1885, it ought not to be collected in this case for the two months of November and December, 1885.

Some evidence was offered by the commonwealth to rebut the presumption that the local assessors in certain counties did actually assess all corporate mortgages in the hands of individual citizens, but this evidence did not relate to the year 1883, in which the triennial assessment was made upon which the taxation for the years 1883, 1884 and 1886 was based, and it was shown that before that assessment was made the auditor general sent to the commissioners and boards of revision of taxes of the several counties and cities of the commonwealth forms of statements and instructions relating to the assessment of property taxable for state purposes, accompanied by a circular letter, which was approved by the state treasurer and secretary of the commonwealth, the other members of the board of revenue commissioners, calling particular attention to the requirements of the law in relation to the assessment of moneys at interest. In due time returns were received by the revenue commissioners from each county and city, purporting to include all mortgages, money owing by solvent debtors, etc. After receiving these returns the revenue commissioners sent out interrogatories to the county commissioners and boards of revision of taxes, inquiring whether the interest bearing bonds of corporations held by individuals had been fully and correctly returned by the assessors, and finally, on the 8th day of August, 1883, acting upon said returns and the answers to the interrogatories, the board of revenue commissioners made, as required by law, a duplicate valuation purporting to include all mortgages and money owing by solvent debtors, etc., within the commonwealth, subject to taxation for state purposes. On these duplicates the state tax of four mills, imposed by the acts of 1879 and 1881, has been collected for the calendar years 1883, 1884 and 1885, with the possible exception of a small balance for which suit has been brought by the attorney general.

Some evidence was offered by the commonwealth for the purpose of showing that the assessment made in 1883 was not so

complete as it purports to be, and that in some counties corporate loans were not returned, but the evidence was very indefinite and unsatisfactory. Evidence was also offered by the commonwealth for the purpose of showing that corporate loans were not included in an assessment made in the year 1884 in the city of Philadelphia, but the assessment had no relation to, or connection with the triennial assessment, under which the taxes for 1883, 1884 and 1885 were collected, and the auditor general, the state treasurer, and the clerk to the state board of revenue commissioners, all testified that the state taxes were collected from the counties and cities on the duplicate valuation made by the board, August 8, 1883, for the years 1883, 1884 and 1885, and that no other assessment was made or ordered by the state revenue board until 1886. In Commonwealth v. Lehigh Valley R. Co., 104 Pa. 89, Justice CLARK said: "We incline to the opinion, that the first tax of four mills, under the act of 1879, would be for the year 1880, and the second for the year 1881; that as the act of 1881 was passed June 10th, after the taxes of that year had accrued, the collection of which was expressly reserved, the report made in November of that year was intended as a basis of exemption from other taxation for the ensuing year. Thus the period of default falls within the time of effecting the local assessments." In accordance with this view we think that the first three mills tax, under the act of 1885, would begin to accrue on and after January 1, 1886, and before June 30th, the date of its passage, the assessment of 1885 would have been already made, and the collection of these is expressly reserved in the act.

For these reasons defendant's first exception is sustained, and the facts are found to be as therein stated, and the defendant's third exception is, also, sustained.

Defendant's second exception is overruled for the reason that we consider the facts irrelevant which we are therein asked to find. Defendant's fourth, fifth, sixth, seventh, and eighth exceptions are overruled on the authority of Commonwealth v. Delaware Div. Canal Co., 123 Pa. 594, and Commonwealth v. Chester City, 123 Pa. 626, above referred to.

The sixth exception on behalf of the commonwealth is, that the court erred in not directing judgment to be entered in favor of the commonwealth, for the tax upon the corporate loans

of the defendant, shown by the second paragraph of the findings of fact to be held by individuals resident in Pennsylvania, and by residents (corporations and other trustees) "in trust for persons whose residence is unknown."

This exception raises three separate questions.

1. As to corporate loans of defendant held by individuals resident in Pennsylvania; and so much of the exception as relates to these is sustained.

2. As to corporate loans held by individual trustees, residents of Pennsylvania. So much of the exception as relates to these is sustained, for the reason that it is a fair inference from the report of defendant to the auditor general and the findings of fact that, even if the cestuis que trust are not residents of the state, the bonds themselves are within the state in the hands of individual trustees, and, therefore, "owned or possessed by" the trustees, and for this reason within the very words oi the act of June 30, 1885; as well as for the further reason that they are in the words of the act "moneyed capital in the hands of individual citizens of the state." They are, therefore, within the terms of the taxing act, as well as within the jurisdiction and taxing power of the state and under the protection of its laws; and, therefore, properly taxable; and, as already stated, so much of the exception as relates to them is sustained.

3. As to the loans of defendant held by corporations of the state acting as trustees. The question whether these are taxable in the possession of the corporation trustees is not entirely clear. In Fox's App., 112 Pa. 337, the Supreme Court held that mortgages owned by corporations were not taxed or taxable by the act of June 30, 1885. The same ruling had previously been made by Judges Mitchell and Thayer in separate cases and opinions with respect to the acts of 1879 and 1881: Appeals of Hunter and others, 18 W. N. 411, and Justice PAXSON, referring to these, said: "It is true Judge Mitchell's opinion refers to the act of 1881, but the language of the two acts is substantially identical, and his reasoning applies equally well to the act of 1885. They both hold, and conclusively show, that the language referred to in the two acts does not extend the tax on mortgages, etc., to corporations."

And Judge Mitchell, in his opinion, shows that the acts of

1879 and 1881 are practically identical in language with § 32, act of April 29, 1844, P. L. 497, differing from the act of April 22, 1846, P. L. 486, in that this act names among taxable persons "any corporate body," and also taxes "all property real or personal not taxed under existing laws, held, owned, used, or invested by any person or corporation in trust for the use, benefit, or advantage of any other person, company, or corporation." And in Spangler v. York Co., 13 Pa. 322, it was said, in the opinion of the Supreme Court, speaking of the act of 1844, above referred to, and the act of June 11, 1840 : " It is pretty obvious, from their context, that they look only to choses in action, and other property, the legal title to which is vested in the same persons who receive and enjoy the proceeds and usance. They were, therefore, probably thought to be exclusive of a large class of cases created by deed or will, where the legal ownership of the principal sum or thing is vested in one set of persons, while the present beneficial interest or right of enjoyment is limited to others. . . . . Then came the act of 1846. . . . . It will be perceived by the express terms of this enactment, all property held, owned, or used, or invested for the use, benefit, or advantage of another, is made the subject of assessment." And in Carlisle Bor. v. Marshall, 36 Pa. 397, it was said by Justice WOODWARD, on page 401 : " Mr. Marshall is a mere trustee, having no interest in the fund whatever. The reason why he is taxable for the fund, for state and county purposes, is that the act of 1846, expressly subjects trust funds to taxation in the hands of trustees, without regard to ownership."

In Appeals of Loughlin et al., 19 W. N. 517, the Supreme Court says : " The repealing clauses of the acts of 1879 and 1885 embrace all prior laws which are 'inconsistent' or 'substantially re-enacted' by those acts. It is impossible for us to say that the acts of 1844 and 1846 are not 'inconsistent' with, or 'substantially re-enacted' by the acts of 1879 and 1885. So far as the taxation of mortgages is concerned, the latter legislation appears to provide a system full, complete, substitutionary in character, and seemingly intended to take the place of the former. In the very best view of the subject for the commonwealth, it is exceedingly doubtful whether the earlier acts can be considered as now in force for the purpose of taxing

mortgages in the hands of corporations, and the mere fact of such doubt interdicts the proposed legislation." And it may be added, that, even if the act of 1846 were still in force, corporations could not under it be taxed in the manner claimed in this case, but only through assessments made by the local assessors as provided by said act.

Since, therefore, the act of 1885, under which the taxes in this case are claimed, does not tax mortgages owned by corporations, and contains no provisions taxing mortgages held in trust which are applicable to corporation trustees, and as, according to the findings of fact, the residence of the persons for whom corporations are acting as trustees is unknown, and it has not been shown that any of them are residents of this state, we think so much of the commonwealth's sixth exception, as relates to corporate loans held in trust by corporations, must be, and it is, therefore, overruled.

This disposes of all the exceptions which have been filed, and it results from the conclusions to which we have come, that the commonwealth is entitled to recover the tax for ten twelfths of a year on all the mortgages and bonds issued by the defendant and held by individuals residing in Pennsylvania, whether for themselves absolutely or in trust for others. The judgment directed to be entered in our former opinion is therefore modified, and judgment is now directed to be entered in favor of the commonwealth and against defendant, as follows, viz.:

| | |
|---|---:|
| Amount of tax, . . . . . . | $33,375 00 |
| Interest at 12 per cent from March 27, 1887, | 4,818 75 |
| Attorney general's commission, . · . | 1,666 75 |
| Total, . . . . . | $39,862 50 |

with interest from May 10, 1888.

Judgment having been entered, the defendant company took the appeal to No. 34, specifying that the court erred:

1–5. In overruling the defendant's exceptions.[1 to 5]

6. In not deciding that § 4 of the act of June 30, 1885, is repugnant to § 1 of article IX. of the constitution of Pennsylvania, which provides that all taxes shall be uniform within the territorial limits of the authority levying the same, and is, therefore, void.

7. In directing judgment to be entered in favor of the commonwealth and against the defendant for $39,862.50.

8. In not directing judgment to be entered in favor of defendant.

The commonwealth took the appeal to No. 44, specifying that the court erred:

1. In not sustaining the commonwealth's sixth exception.°

2. In not holding that the commonwealth was entitled to recover the tax upon corporate loans held by corporations of Pennsylvania, in trust for persons whose residence is unknown.

3, 4. In sustaining defendant's first and third exceptions.ᶠ ᵍ

5. In not holding the commonwealth to be entitled to a full year's tax upon the amount of the corporate loans shown by the findings of fact to be held by individuals resident in Pennsylvania, and by resident corporations and other trustees, in trust for persons whose residence is unknown.

*Mr. M. E. Olmsted,* for the Lehigh Valley R. Co.

1. Section 1, article IX. of the state constitution provides not only that " all taxes shall be uniform upon the same class of subjects," but also that, even when uniform, they " shall be levied and collected under general laws." The taxes resulting from the operation of § 4 of the act of 1885 are not uniform : Washington Avenue, 69 Pa. 362; Banger's App., 109 Pa. 79. As it applies only to a portion of the class of taxable subjects, the section is not a general law for the levying and collection of taxes: Wheeler v. Philadelphia, 77 Pa. 338; Commonwealth v. Patton, 88 Pa. 258; Scowden's App., 96 Pa. 422; Strine v. Foltz, 113 Pa. 349; Philadelphia v. M. E. Church, 115 Pa. 291; Weinman v. Pass. Ry. Co., 118 Pa. 192; Ayars's App., 122 Pa. 266.

2. The first section of the act of 1885 is identical with the seventeenth section of the act of 1879 and the first section of the act of 1881, which were before this court in Commonwealth v. Lehigh Valley R. Co., 104 Pa. 89. It was there held that the tax imposed by the acts of 1879 and 1881 was upon the actual value of the bonds, and that a legal ascertainment of that actual value, with notice to the owner of the bond and the right of appeal, was essential to the assessment of a valid tax. The first section of the act of 1885 reimposes the same

tax in the same language. Recognizing the necessity of an assessment, the fourth section attempts to provide for it by requiring the treasurer of the corporation, upon the payment of interest, to assess the tax "imposed and provided for state purposes" (which is plainly the tax imposed by the first section), upon the nominal value of each bond, etc.

3. This is precisely what this court said in Commonwealth v. Lehigh Valley R. Co. was not a legal assessment. There is no ascertainment of the actual value, no notice to the owner, and no right of appeal. For these reasons the tax sought to be enforced in this case is invalid: Commonwealth v. Lehigh Valley R. Co., 104 Pa. 89; Cooley on Taxation, 259; Blackwell on Tax Titles, 114; Bratton v. Mitchell, 1 W. & S. 310; Miller v. Hale, 26 Pa. 432; Commonwealth v. Blair Co., 2 Pears. 416; McReynolds v. Longenberger, 57 Pa. 13; Philadelphia v. Mackey, 2 Pears. 406; Weber v. Reinhard, 73 Pa. 376.

4. Section 1, article XIV. of the amendments to the constitution of the United States provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." It has been held that this provision applies to taxation, and that where the tax is upon property, the only way in which "the equal protection of the laws" can be afforded to the tax payer is by the application of a fixed rate to the actual value of the property taxed: San Mateo Co. v. Railroad Co., 13 Fed. R. 722; Stewart v. Palmer, 74 N. Y. 186; Cooley on Taxation, 265–6; Insurance Co. v. Yard, 17 Pa. 338; Philadelphia v. Miller, 49 Pa. 448; Ervine's App., 16 Pa. 256.

*Mr. William S. Kirkpatrick*, Attorney General, and *Mr. John F. Sanderson*, Deputy Attorney General, for the commonwealth:

1. The court was in error in sustaining the first and third exceptions of the defendant, and in pursuance of the findings thus made failing to enter judgment for a full year's tax. The report for the tax in question here was made on the first Monday of November, 1886. The settlement was made for the first tax that could be legally collected under the act of 1885, to wit: the tax for the year 1886. It may be true that the settlement purports to be for tax on scrip, bonds, etc., for the

year ending the first Monday of November, 1886, but, if the effect of the act of 1885 was to make the tax payable for the calendar year, and the tax year was to be such calendar year, then the settlement would have annexed to it its legal effect, whatever might be the words employed by the auditor general in making the settlement, and the same could properly be treated as surplusage. The settlement was for a proper amount and for the full tax year, to which the report of the company was intended to relate: Commonwealth v. Chester City, 123 Pa. 626.

2. We complain that the court below erred in not entirely sustaining the commonwealth's sixth exception, and in over-ruling so much thereof as relates to corporate loans held in trust by corporations. The cases cited by the court below had no reference to the question of the taxability of mortgages in the hands of corporations as trustees, and the act of April 22, 1846, P. L. 486, is not repealed by the act of 1879: Price v. Hunter, 21 W. N. 306; Philadelphia etc. Co.'s App., 17 W. N. 446. Property held in trust should be assessed to the trustee where he resides: 1 Desty on Taxation, 337; Borough of Carlisle v. Marshall, 36 Pa. 401; Spangler v. York Co., 13 Pa. 322; Lewis v. Chester Co., 60 Pa. 325; West Chester School District v. Darlington, 38 Pa. 157; Latrobe v. Baltimore, 19 Md. 13; Gatlin v. Hall, 20 Vt. 152; Dorr v. Boston, 6 Gray 131.

3. In the appeal of the defendant company to No. 34, the commonwealth submits in answer to the appellant's argument, the argument submitted by the commonwealth, last year, in Commonwealth v. Delaware Div. Canal Co., 123 Pa. 594, with the opinion of this court therein.

*Mr. Olmsted,* in reply:

1. The commonwealth's third specification of error is directed to a finding of fact, but it cannot be reviewed here: Jamison v. Collins, 83 Pa. 359; Lee v. Keys, 88 Pa. 175; Brown v. Dempsey, 95 Pa. 243; Bradlee v. Whitney, 108 Pa. 362; Southern Md. R. Co. v. Moyer, 125 Pa. 506.

2. The claim of the commonwealth in this instance is for the year ending with the first Monday of November, 1886, thus overlapping and including two months of the calendar year

1885. For more than half a century, under a succession of statutes, the officers of corporations have been required to report their stock and dividends for the year ending with the first Monday of November, the tax being payable 15 days after the 31st day of December: see § 4, act of June 7, 1879, P. L. 112. Other taxes have been collected, some for the calendar year, and some for years ending at various dates. It was the undoubted intention of the legislature in 1885, to fix the same tax year for corporate loans as had so long prevailed for corporate stock. There are no objections to that, except that the act must not be so enforced as to produce double taxation for a portion of the year 1885, which was clearly not intended and is never to be presumed.

3. The act of June 30, 1885, does not include bonds held by corporations either in trust or otherwise. Property held in trust is taxable, if at all, to the legal owner. But the legal owner in this case is a corporation, and the section applies only to natural persons: Fox's App., 112 Pa. 337. Nor does the act of 1846 include such property: Loughlin's App., 19 W. N. 519.

### COMMONWEALTH'S APPEAL.

OPINION, MR. JUSTICE CLARK:

This case, in the court below, was an appeal by the Lehigh Valley Railroad Company from an account settled by the auditor general, etc., on January 21, 1887, for tax on bonds, scrip, and certificates of indebtedness of the company, "for the year ending first Monday of November, 1886," under the fourth section of the act of June 30, 1885, P. L. 193.

The Lehigh Valley Railroad Company is a corporation of Pennsylvania, chartered by the acts of assembly of April 21, 1846, P. L. (1848) 575, and January 7, 1853, P. L. 1. In pursuance of authority conferred by its charter, this company borrowed money, securing the same by bonds and mortgage, to the amount of $25,458,000. On the first Monday of November, 1886, their bonds were held as follows:

| | | |
|---|---|---|
| 1. By individuals resident in Penna. | . . | $13,141,000 |
| 2. "      "      not resident in Penna. | . | 1,322,000 |

Amount carried forward, . . . . $14,463,000

| | |
|---|---:|
| Amount brought forward, . . . . | $14,463,000 |
| 3. By persons residence unknown ($6,000,000 of which were issued in London) . . | 7,482,000 |
| By persons whose residence is unknown, as follows: | |
| 4. By individual trustees, residents of Pennsylvania . . . . . . . | 209,000 |
| 5. By individual trustees, non-residents of Pennsylvania . . . . . . | 10,000 |
| 6. By individual trustees, residence unknown | 78,000 |
| 7. By corporations of Pennsylvania, acting as trustees . . . . . . . | 633,000 |
| 8. By corporations of Pennsylvania as owners | 2,583,000 |
| Total . . . . . . | $25,458,000 |

The treasurer made a return of the indebtedness of the company, as required by the fourth section of the act of 1885, but failed either to assess or collect the tax of three mills, as therein provided, paying the interest in full as it matured to the company's creditors. Thereupon the auditor general and state treasurer settled an account against the company for tax upon all of the bonds above enumerated, excepting upon the amount at number 2, held by non-residents of the state, which, under the ruling, In re Foreign-held Bonds, 15 Wall. 300, were conceded not to be liable to taxation.

The case was brought into the Court of Common Pleas of Dauphin county on an appeal, pursuant to the provisions of the act of March 30, 1811, 5 Sm. L. 230, and was tried by the court without a jury, under the act of April 22, 1874, P. L. 109.

Prior to the passage of the act of 1885, corporate bonds and securities of whatever character were taxable upon their actual value; and, as neither the act of June 7, 1879, nor that of June 10, 1881, provided any means of assessment or valuation, it was held in the case of the Commonwealth v. Lehigh Valley R. Co., 104 Pa. 89, that it was the duty of the local assessors, in making the general assessment of subjects liable to taxation for state purposes, to value and assess corporate bonds, wherever found, in the hands of resident owners, and that it was not to be presumed that the assessors failed in the discharge of their duty. The learned judge of the court below found as matter

of fact, in substance, that for the year 1885 all mortgages, money owing by solvent debtors, etc., had been valued for taxation under the ordinary general processes by the local assessors for the calendar year of 1885, and that the state tax was in fact paid thereon at the rate of four mills on the dollar. Some testimony was offered to rebut this presumption, but the finding of the court is as binding upon us as the verdict of a jury: Jamison v. Collins, 83 Pa. 359; Bradlee v. Whitney, 108 Pa. 362.

The learned judge was right in assuming that the state tax on these bonds must be presumed to have been paid for the calendar year 1885; but we are not clear that he was right in charging the defendants with ten months' taxes only, being for a part of the year 1886, that is to say, from January 1, 1886, to the first Monday in November of the same year, upon the presumption that under the act of 1885 the taxing year ended upon the latter date.

A careful examination and analysis of the provisions of the fourth section of the act of 1885, is necessary to a clear understanding of the purpose of the legislature. It will be observed that the tax, which the treasurer of the corporation is by this section authorized and directed to assess and collect, is "the tax imposed and provided for state purposes;" that is to say, the tax which is imposed and provided by the first section of the same act, upon the general class of subjects, consisting of mortgages, money owing by solvent debtors, etc., at the rate of three mills on the dollar of the value thereof, annually. The effect of the fourth section, as we said in Commonwealth v. Delaware Div. Canal Co., 123 Pa. 594, was to subdivide this general class into two particular classes, one embracing the debts of private corporations, to be taxed at the rate specified on their nominal value, the other embracing the residue of the general class, except the bonds of municipal corporations, to be taxed at the same rate upon their value to be ascertained under the ordinary processes of assessment by the local assessor. It is plain, then, that the tax in question, although rated upon the nominal value, is the state tax imposed and provided on mortgages, money owing by solvent debtors, etc., generally by the first section of the act of 1885. The tax thus imposed annually by the first section is undoubtedly for

the calendar year, and whatever may have been the practice pursued heretofore in the office of the auditor general, it is plain that there is nothing in the fourth section to indicate that the tax upon corporate loans was in this respect an exception to the general rule provided, or was to be regulated within the limits of any other year than the calendar year. This section provides that it shall be the duty of the treasurer to assess the tax in each case respectively, upon the payment, or at the time of payment, of the interest; to deduct it from the interest, and to return the aggregate amounts thus assessed and deducted into the state treasury, within fifteen days after the close of the calendar year. There is no provision either for the assessment or collection of the tax on the first Monday of November. On that day, however, it is the duty of the treasurer, annually, to return the amount of the indebtedness of the corporation, owned by residents of the commonwealth, as nearly as the same can be ascertained, as a basis, perhaps, for settlement of the tax in default of an assessment and collection by the treasurer. The first Monday of November was fixed, because on that day in each year, by the act of 1879, the same corporations are held for their return to the auditor general of the amount of their stocks and dividends; and, as some day in the year must, of necessity, be designated for the return of their indebtedness, the first Monday of November was, for the reason stated, doubtless deemed convenient for the purpose, as all the requirements of the several statutes might thus be complied with in the same report.

The tax being assessed and collected at the interest paying periods, a change of ownership between the date of the assessment and the collection could not occur. The obligation to pay the tax arises out of the assessment; and, that act being contemporaneous with the payment of the interest, the obligation to pay attaches to the then holder of the bond, and no intermediate change of ownership, either by the transfer of a resident to a non-resident holder, or, conversely, by a non-resident to a resident holder, could embarrass the rights of the company or of the commonwealth. It is not for the company to complain, therefore, that in this settlement they may be charged with taxes upon bonds, which, by an intermediate transfer before this settlement was made, became the property

of non-resident holders who are not liable to the tax; for a compliance with the law on the part of the company would have enabled them to fix the obligation for payment of the tax upon the resident holder of the bond at the very time of the payment of the interest, and the rights of non-resident holders could not have intervened. These consequences, if any such exist, result from a wilful disregard of a plain duty imposed by law, and the company is in no condition now to complain.

Where an act is required to be done annually, and no day is designated, either in express words or by implication, for the beginning of the year, it will ordinarily be presumed that the calendar year is intended. By the act of June 7, 1879, P. L. 112, fixing the rate of taxation of the shares of capital stock of certain corporations, it is expressly provided that the tax shall be computed upon the dividends made and declared " during any year ending with the first Monday of November," and to the same effect were the previous acts of March 20, 1877, P. L. 6; April 24, 1874, P. L. 68; May 1, 1868, P. L. 108; April 21, 1858, P. L. 419, relating to the same subject. For thirty years or more, therefore, the taxes upon capital stocks have been rated and imposed according to the amount of dividends made within a fiscal year, ending on the first Monday of November, but no such thing is found in the act of 1885, nor is there anything in the act from which any implication could arise that any other than the calendar year was intended. We are clearly of opinion, therefore, that " the tax imposed and provided for state purposes " is the tax imposed and provided in the first section of the act; that it is a tax for the calendar year, and the fourth section was intended merely to provide a different method of assessment and collection.

The company was bound to see to it that the treasurer performed his duty in assessing the tax and retaining the amount out of the interest; if he made default in this, his default must be visited upon the company which he represents and for which he acts: Commonwealth v. Delaware Div. Canal Co., 123 Pa. 594. The settlement is made against the company, not for taxes of the company, but for taxes which the company, through its treasurer, ought to have collected. If the treasurer has failed or refused to perform what the law plainly required him to do, and has thereby relinquished his right to charge the

creditors upon whom the primary obligation would otherwise
have rested, the company whose interests he represented and
whose instructions he is presumed to have pursued, is rightly
held for the consequences of such wilful default: Common-
wealth v. Lehigh Valley R. Co., supra; Commonwealth v. Del-
aware Div. Canal Co., supra.

The settlement made in this case by the auditor general, etc.,
is in the following form:

"LEHIGH VALLEY RAILROAD COMPANY.

"In account with the Commonwealth of Pennsylvania, Dr.

"For tax on scrip, bonds, and certificates of indebtedness,
per § 4 of the act of June 30, 1885, for the year ending first
Monday of November, 1886, as per report herewith filed:
Nominal value of scrip, bonds, and certificates

| owned by residents of Pennsylvania, | . $24,136,000 | 00 |
|---|---|---|
| Tax, three mills, . . . . . | 72,408 | 00 |
| Deduct treasurer's commission, . . . | 412 | 00 |
| Due commonwealth, . . . . | 71,995 | 96 " |

In charging the tax for the year ending the first Monday of
November, 1886, it is probable that the auditor general followed
the practice which had been pursued in his office under the act
of 1879, and the other acts already referred to, assuming that
the tax on corporate securities was to be rated for the same
fiscal year as taxes on capital stocks. In this he was certainly
mistaken, but the tax was not settled until it was due for the
calendar year; it was settled at the proper time, and for the
period and amount which the company was under legal obliga-
tion to pay; it was settled under authority of, and by express
reference to the act of June 30, 1885, and upon the basis of the
report made on the first Monday of November, 1885. The
statement that it was for the year ending the first Monday of
November was but a clerical blunder, which was open to cor-
rection and amendment. The commonwealth's claim was in
terms "for tax . . . . . per § 4 of the act of June 30, 1885;"
the words "ending first Monday of November," were mere
surplusage, and should have been stricken from the record.

It appears further by the findings of the court below, that at
the date of the return, bonds of the Lehigh Valley Railroad
Company, amounting to $633,000 were held by certain corpo-
rations of the state as trustees for various persons, whose resi-

dence is unknown, and the learned judge was of opinion, and he found as matter of law, that such securities under our ruling in Fox's App., 112 Pa. 337, were not taxable under the act of 1885 for state purposes, and that, therefore, the defendant company was not properly chargeable with the taxes thereon, in the settlement made for the year 1886. In Fox's Appeal, supra, it was held, following the construction given to the act of March 25, 1831, P. L. 206, in School Directors v. Carlisle Bank, 8 W. 289, that the phrase, "Any person or persons whatsoever," in the first section of the act of 1885, was not in conflict with the constitution upon this ground, as the tax upon the capital stock, under the act of 1879, was in effect a tax upon the property and assets of the corporation of which its mortgages, etc., constituted a part. Fox's Appeal was followed by Hunter's Appeal, Adair's Appeal, and Barry's Appeal, 18 W. N. 411, which are to the same effect. The ruling of all these cases was afterwards approved in Loughlin's App., 19 W. N. 517. In the case last cited it was further contended by the commonwealth that if mortgages, etc., of corporations were not taxable under the act of 1879, and the supplementary acts of 1881 and 1885, they were still taxable under the acts of April 29, 1844, P. L. 497, and April 22, 1846, P. L. 486 ; but this court was unwilling to accept this view of the law, and in a Per Curiam opinion we said : "In consideration of the very comprehensive character of the legislation contained in these acts (acts of 1879, 1881, and 1885) in reference to the taxation as well of mortgages as of other forms of personal property, it is a matter of the gravest doubt whether the acts of 1844 and 1846, so far as they relate to the taxation of mortgages in the hands of corporations, are now in force. We do not think it is the proper function of the judiciary department of the government to impose taxation, which is a species of confiscation, by a strained construction of doubtful legislation. The proper remedy for that kind of difficulty is legislation which is not doubtful. The repealing clauses of the acts of 1879 and 1885 embrace all prior laws which are 'inconsistent' with, or are 'substantially re-enacted' by, those acts. It is impossible for us to say that the acts of 1844 and 1846 are not 'inconsistent' with, or 'substantially re-enacted' by the acts of 1879 and 1885. So far as the taxation of mortages is concerned, the lat-

ter legislation appears to provide a system full, complete, sub-stitutionary in character, and seemingly intended to take the place of the former. In the very best view of the subject for the commonwealth, it is exceedingly doubtful whether the earlier acts can be considered as now in force for the purpose of tax-ing mortgages in the hands of corporations, and the mere fact of such doubt interdicts the proposed taxation." An injunc-tion was accordingly entered to restrain the assessment of such securities and the collection of taxes thereon, under the acts of 1844 and 1846. We must start then with the assumption that these portions of the acts of 1844 and 1846 have been supplied by the later acts and are no longer in force.

The question, therefore, turns upon the true and proper con-struction of the act of 1885. The first section provides that all mortgages, etc., owned or possessed by any person or per-sons whatsoever, except, etc., " and all other moneyed capital in the hands of individual citizens of the state," shall be taxa-ble for state purposes. Conceding, for it must now be consid-ered as settled, that the phrase, " by any person or persons whatsoever," does not embrace corporations, it must certain-ly be admitted that the plain purpose and intent of the leg-islature was to include all sorts of securities and moneyed capital, owned or possessed by individuals ; and, as the act of 1846, which authorized the assessment of such securities, when held in trust in the name of the trustee of the legal owner, is no longer in force, we can see no reason why the assessment should not be made in the name of the beneficial owner. Whilst the cestui que trust of the bonds in question may not " possess " them, he may in some sense be said to own them, and it is all mortgages owned or possessed by any person or persons which are taxable for state purposes. We are not un-mindful of the fact that in the interpretation of the acts of 1831, 1840, and 1844, this court, in several cases, expressed the opinion that " from their context in those acts, the words ' owned or possessed ' applied only to choses in action, and other property, the legal title to which is vested in the same persons who received and enjoyed the proceeds and usance thereof:" Spangler v. York Co., 13 Pa. 322. And it was doubtless owing to the general impression that this was so, that specific provision was made for the taxation of trust securities

in the name of the trustee by the act of 1846. But the words are readily and reasonably susceptible of a different and a wider signification, and the context in the act of 1885 justifies a more enlarged and comprehensive interpretation. "Moneyed capital" is not money merely; it is money employed as such in trade, and moneyed capital in the hands of the individual citizen is money thus employed by him or for his benefit. Bonds held by a corporation in trust for others constitute no part of the moneyed capital or stock of the corporation, and as it is taxable as moneyed *capital,* it seems reasonable, where no other provision is made, that it should be taxed to the person whose *capital* it is, and for whose benefit it is employed. We are well satisfied that the act of 1885 was intended to be more comprehensive than the act of 1844; the addition of "all other moneyed capital," etc., clearly indicates this, and that other forms of individual securities, not included within the words taken from the act of 1844, were intended to be embraced. It certainly was not in the mind of the legislature to permit this class of securities to escape taxation. Such a construction of this section of the act would bring it in direct conflict with the provision of the constitution of the state, which provides that all taxes shall be uniform on the same class of subjects, and it is our duty to give this section of the act such a reasonable construction as will not entirely defeat its purpose and effect. We are of opinion that the bonds of the Lehigh Valley Railroad Company, held in trust by corporations, were properly taxable, not in the name of the corporations holding them, perhaps, but in the name of the beneficial owners thereof. If this were not so, the holders of corporate bonds would have it in their power, at their pleasure, by a mere transfer and deposit in trust for their own use, or the use of another, to place their bonds outside of the operation of this act, and by a mere device or shabby trick to evade the payment of a state tax thereon. There is neither reason nor authority to support such a proposition; it is absurd to suppose the legislature could have so intended.

The $633,000 of bonds in question are returned as held in trust, for persons whose residence is unknown, but the bonds were issued by a corporation of this state, doing business therein. They were separated from the person of the owners,

and were found actually within the state in the hands of a resident trustee, who presented the interest coupons for payment. In a case where the corporation wholly disregarded its duty and refused to assess the tax, or to make any effort whatever to collect it, and especially in the absence of any proof to the contrary, these bonds must be presumed to be owned by residents of Pennsylvania.

We are of opinion, for the reasons stated, the defendants are rightly held for the taxes upon the $633,000 of their loans, held by corporations of Pennsylvania acting as trustees.

For the reasons indicated, the judgment entered in the court below is reversed, and judgment is now entered in favor of the commonwealth for the sum of sixty thousand nine hundred and sixty-five dollars with interest thereon, according to law, and costs.

| | |
|---|---:|
| Tax at the rate of three mills . . . | $41,949.00 |
| Ten per cent penalty . . . . | 4,194.90 |
| Attorney-general's commission, 5 per cent . | 2,097.40 |
| Interest at 12 per cent. . . . . | 12,724.52 |
| | $60,965.00 |

## LEHIGH V. R. CO.'S APPEAL.

OPINION, MR. JUSTICE CLARK:

This case was brought into the Common Pleas of Dauphin county upon an appeal by the Lehigh Valley Railroad Company from the account settled by the auditor general and state treasurer, for tax on the bonded debt of the company, under the fourth section of the act of June 30, 1885, P. L. 193, for the year 1886. Neither party being satisfied with the judgment of the court, it is brought here, not only upon an appeal by the commonwealth, but also upon an appeal by the company.

The company's contention is:

1. That the fourth section of the act of 1885 is repugnant to § 1 of article IX. of the constitution of this state, which provides that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and that they shall be levied and collected under general laws.

2. That the provisions of the act of 1885 are in conflict with

the constitution of the United States as follows: First with § 10 of article I., which forbids the passage of any law impairing the obligations of a contract; second, with article V. of the amendments, which provides that no person shall be deprived of his property without due process of law; and, third, with § 1 of article XIV., which provides that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, deprive any person of life, liberty or property, without due process of law, or deny to any person within its jurisdiction the equal protection of the laws.

3. That in any event the company is not liable for the tax upon its bonds, excepting for that proportion of a year's tax which accrued between December 31, 1885, and the date at which the last payment of interest was due and payable upon the bonds within the year ending first Monday of November, 1886.

As the matters involved in the first and second questions presented were fully discussed and decided in the very recent case of the Commonwealth v. Delaware Div. Canal Co., 123 Pa. 594, it is not necessary now to enter upon any futher discussion of them. We are well satisfied that the case referred to was rightly decided; and, as this case in this respect is identical in principle, it would be useless to repeat the reasons there assigned for the judgment entered. The opinion filed in the Commonwealth v. Delaware Div. Canal Co., supra, is confined mainly to a discussion of the question of the alleged conflict of the fourth section of the act of 1885, with the constitution of this state; but the same considerations which prevailed in the discussion of that question were then, and are now, supposed to be sufficient in the main to establish its consistency with the provisions of the federal constitution. In the opinion filed in that case, it was our purpose to show that the tax was in the nature of a specific tax, not a tax upon actual value; that the legislature having fixed the nominal value of the bonds as the basis of taxation, no further assessment, properly so called, was required; that it was a proper exercise of legislative power to require the company's treasurer to " assess " the tax, that is to say, to determine the amount of the company's loans liable to taxation at their nominal value, and to apply thereto the rate fixed by law, the taxation being the result of the rate thus applied.

Taxes have been levied and collected in Pennsylvania in this form for more than a half a century. The fourth section of the act of 1885 is but a transcript of the forty-second section of the act of 1844, which provides the only method since its passage for the assessment and collection of taxes upon municipal loans. The act of 1844 is still in force, and its validity, until the very recent case of Commonwealth v. Chester City, 123 Pa. 626, has never been disputed. On the trial of cases involving the construction and validity of other statutes differing from that of 1844, this provision of the last mentioned act has been uniformly and consistently recognized as a valid exercise of legislative power: Maltby v. Reading etc. R. Co., 52 Pa. 140. Specific taxes for a long series of years have been imposed within this state, not only upon particular classes of property, but upon classes of persons, and we have never known the power, when properly exercised, to have been called in question.

Taxes are generally classified as specific, ad valorem, and for public benefit. The last two classes are necessarily based upon an assessment of actual values; whereas, in the first class the valuation is either fixed by statute, or the tax is intended to subserve some supposed public interest or policy. " Of the different taxes which the state may impose," says Mr. Justice FIELD, in Hagar v. Reclamation District, 111 U. S. 709, " there is a vast number, of which, from their nature, no notice can be given to the tax payer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes (not dependent upon the extent of his business), and generally, specific taxes on things, or persons, or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element of a judicial nature, and nothing could be changed by hearing the tax payer. No right of his is, therefore, invaded."

" Though differing from the ordinary forms pursued in courts of justice, the general system of procedure for the levy and collection of taxes, if not arbitrary, oppressive, and unjust,

has always been regarded as due process of law:" Kelly v. Pittsburgh, 104 U. S. 78; Davidson v. New Orleans, 96 U. S. 97. It is difficult to see how the imposition of a tax upon money at interest can be supposed to impair the obligations of the contract which secures payment. The tax is upon the debt; the debtor is simply the collector of the tax, and his remedy for collection is to defalk it from the interest; this, and no more, is the legal effect of the statute. The whole question turns upon the validity of the tax, for if the tax is valid the creditor certainly cannot complain of the remedy provided for its collection. The contract is in no sense impaired; the debtor is held for the payment of the whole debt, but upon the exact footing of his contract; he is simply permitted to defalk such part thereof as he has, under legal obligation, paid, laid out, and expended in behalf of the creditor.

The questions of classification and of uniformity are fully considered in the case of the Delaware Div. Canal Company, and we deem it unnecessary to enter into any discussion of those subjects. We are well satisfied with the views there expressed, and are unwilling to recede from the conclusions to which they lead. We cannot see that the company has any cause of complaint, grounded either in the provisions of the constitution of this state or of the United States.

The third branch of this case, covered by the first assignment of error, is wholly without merit. The reasons which we think justify this conclusion will be found fully stated in the opinion filed in the Commonwealth's Appeal, in the case of Commonwealth v. the Lehigh Valley Railroad Co., a writ of error from the same judgment and argued with this case [ante, 445.] Upon the specifications of error filed in this case, the

Judgment is affirmed.