# COMMONWEALTH v. NEW YORK, L. E. & W. R. CO

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 6, 1889—Decided October 7, 1889.

[To be reported.]

1. Section 4, act of June 30, 1885, P. L. 193, requiring corporations, upon the payment of interest upon their corporate indebtedness, to deduct and return the state tax imposed, applies not only to domestic corporations, but to foreign corporations doing business in this state.
2. A corporation of one state cannot do business in another state without the latter's consent, express or implied, and that consent may be accompanied with such conditions as the latter may impose, not unconstitutional in character and effect and inconsistent with jurisdictional authority.
3. It is competent for the legislature of Pennsylvania to impose upon foreign corporations doing business in this state, the duty, upon the payment of interest upon their corporate bonds held by resident holders, to deduct and return the state tax imposed by § 4, act of June 30, 1885, P. L. 193.
4. The New York, L. E. & W. R. Co. is not relieved from this duty to collect and return said tax, or from liability therefor upon failure to perform such duty, by anything authorized, conferred, or required in the acts of February 16, 1841, P. L. 28, and March 26, 1846, P. L. 179.
5. Other questions, relating to the constitutionality, etc., of said act of June 30, 1885, P. L. 193, are ruled by Commonwealth v. Delaware Div. Canal Co., 123 Pa. 594, and the appeals in Commonwealth v. Lehigh V. R. Co., ante, 429.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 41 May Term 1889, Sup. Ct.; court below, No. 250 March Term 1889, C. P.

On June 28, 1888, upon report made, the auditor general and state treasurer stated and entered a settlement of account for taxes against the New York, Lake Erie & Western Railroad Company as follows:

" For tax on scrip, bonds, and certificates of indebtedness, per § 4 of the act of June 30, 1885, for the year ending first Monday of November, 1887, as per report herewith filed:

Nominal value of scrip, bonds, and certificates
of indebtedness, owned by residents of Pennsyl-
vania, . . . . . $78,573,485.10

    Tax, three mills, . . . . . $235,720.45
    Deduct treasurer's commission, . . . 1,228.60

    Due commonwealth, . . . $234,491.85 "

From the said settlement the railroad company appealed, fil-
ing specifications of objection to the settlement which, inter
alia, averred:

2. The tax to which bonds and mortgages are made subject
by the act of June 30, 1885, is an annual tax upon the actual
value thereof; and before any tax can lawfully be due upon any
bond or mortgage, there must have been a legal assessment or
ascertainment of its value, with notice to the owner and the right
of appeal. The loans of the company appellant bear different
rates of interest and differ in market and in actual values.
Neither the company nor its officers were authorized by law to
make any valuation or assessment of its bonds for taxation, nor
were they furnished with any such valuation or assessment made
by any properly constituted authority. Neither the company
nor its officers, therefore, could lawfully have deducted any tax
from any interest paid during or for the year, or any part thereof,
for which the tax is charged.[1]

3. If the act of June 30, 1885, requires that the company, or
the treasurer thereof, when paying interest to its creditors, shall
retain from them a so-called tax upon bonds which had not been
assessed and valued by lawful authority, or makes the company
or the treasurer thereof liable unto the commonwealth for failure
to collect said so-called tax, then the said act is unconstitu-
tional and void, because in conflict with article V. of the amend-
ments to the constitution of the United States, which provides
that " no person shall be . . . . deprived of life, liberty or prop-
erty without due process of law ; " and also because in conflict
with § 1 of article XIV. of the amendments to the constitution
of the United States.[2]

4. The said act of assembly is void, also, because in conflict
with § 9 of article I. of the constitution of Pennsylvania, which
provides that no person shall be " deprived of his life, liberty
or property unless by the judgment of his peers or the law of
the land." [3]

5. The said act of assembly is void, also, because in conflict with § 10 of article I. of the constitution of Pennsylvania, which provides that private property shall not be taken for public use without due authority of law.[4]

6. The act of June 30, 1885, so far as it relates to the taxation of the bonds, mortgages or other loans of the company appellant, or requires the said corporation, or the treasurer thereof, to deduct any tax when paying interest thereon, is incomplete, inoperative, unconstitutional and void, the said act failing to provide any means for the assessment of said bonds, mortgages and loans, or for ascertaining their value or the amount of tax to be deducted from the interest paid.[5]

7. If the act of June 30, 1885, does not require an assessment or valuation of bonds and mortgages owing by corporations, but requires the treasurers of corporations to calculate the tax at three mills upon the nominal, regardless of the real, value of said bonds and mortgages, which bonds and mortgages, as in the case of this corporation, differ in real and in market values, and to retain the tax so calculated from the interest paid to the holders of said bonds and mortgages, then the said act is in conflict with § 1 of article IX. of the constitution of Pennsylvania, which requires that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." For the same reason the said act of June 30, 1885, is also void, because in conflict with § 1 of article XIV. of the amendments to the constitution of the United States.[6]

8. The act of June 30, 1885, and other acts of assembly relating to the taxation of moneys at interest, require that bonds and mortgages owing by natural persons, and shares of stock in banks and other corporations, shall be taxed at their actual value. If the said acts or any of them require that bonds and mortgages owing by corporations shall be taxed in a different manner, that is to say, upon their nominal value regardless of their real value, then the said act or acts are void because in conflict with § 1 of article IX. of the constitution of Pennsylvania, which requires that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," and also because in conflict with § 1 of article XIV. of the amendments to the constitution of the United States.[7]

Statement of Facts.

9. The act of June 30, 1885, in so far as it requires the company appellant or the treasurer thereof to deduct from the interest due to its bondholders a tax which has not been lawfully assessed, impairs the obligation of the contract between the said company and its creditors, and is void because in conflict with § 10 of article I. of the constitution of the United States, which forbids any state passing any law impairing the obligations of contracts.[8]

10. The charter granted to the corporation appellant neither requires nor permits the said corporation to act as a collector of state taxes, and so much of the act of June 30, 1885, as imposes upon it additional burdens by requiring it to collect, or become responsible for, the taxes due by other corporations and individuals, its creditors, is in violation of § 10 of article I. of the constitution of the United States, which forbids any state passing any law impairing the obligations of contracts, and is, therefore, void.[9]

22. The New York, Lake Erie & Western Railroad Company is not a corporation of the state of Pennsylvania, but is a corporation of, and located in, the state of New York, having its principal office and place of business in the city of New York, in said state, from which state alone it derives its corporate existence, and in which state, namely in the city of New York, all of its bonded indebtedness was contracted, and the bonds actually issued and sold, and are payable, principal and interest; and the said interest is there actually paid to persons there doing business. The said company has no right, under its charter, to assume the duties of an assessor or collector of taxes for the state of Pennsylvania; neither is it competent or legal for the state to impose such duties upon said company; and the act of June 30, 1885, if it requires that this company, or the treasurer thereof, shall, in paying interest in the state of New York, retain any part of the interest stipulated to be paid to the holders of its bonds, impairs the obligation of the charter contract between the state of New York and the said company, and also the obligation of the contract between the said company and the owners of its bonds and is, therefore, void, because repugnant to paragraph 1 of § 10 of article I. of the constitution of the United States, which provides that no state shall pass any law impairing the obligations of contracts.[10]

The cause was submitted to the decision of the court, without a jury, under the provisions of the act of April 22, 1874, P. L. 109, and after hearing had, the court, SIMONTON, P. J., filed the following decision:

### FINDINGS OF FACT.

1. The defendant, the New York, Lake Erie & Western Railroad Company, is a corporation chartered by the state of New York. The present corporation was formed by certificate filed in the office of the secretary of state of New York, April 27, 1878, by the purchasers, at judicial sale, of the property and franchises of the Erie Railway Company, which last named company had been organized also under the laws of the state of New York, and was the successor of the New York & Erie Railroad Company, likewise a corporation of that state. The defendant is authorized to do business in Pennsylvania, and, in pursuance of the act of April 22, 1874, P. L. 108, entitled "An Act prohibiting foreign corporations from doing business in Pennsylvania without having known places of business and authorized agents," duly certified to the secretary of the commonwealth of Pennsylvania the establishment of an office at Susquehanna in Susquehanna county, in this state, and the appointment of an agent authorized to transact business therein.

2. The main line of railroad owned and operated by defendant extends from Jersey City, New Jersey, to Dunkirk, New York, about 428 miles, of which 42 are within the counties of Pike and Susquehanna, in Pennsylvania, having been constructed there to avoid engineering difficulties, under authority conferred by an act of the general assembly of Pennsylvania, entitled "An Act to authorize the New York & Erie Railroad Company to construct said road through a portion of Susquehanna county, in the state of Pennsylvania," approved February 16, 1841, P. L. 28, and an act entitled "A supplement to an act entitled 'An Act to authorize the New York & Erie Railroad Company to construct said road through a portion of Susquehanna county, in the state of Pennsylvania,' approved the sixteenth day of February, one thousand eight hundred and forty-one," approved March 26, 1846, P. L. 179.

3. Defendant has paid to the state of Pennsylvania annually the sum of $10,000, required by the act of March 26, 1846, P. L. 179, and has also paid the annual taxes upon capital stock required by said act.

4. In pursuance of authority granted by the laws of the state of New York, the property of the company has been mortgaged to the extent of $78,573,485.10. The mortgages are of different issues, bearing different rates of interest, and differ in actual values. The following is a detailed statement of them:

\* \* \* \* \* \* \* \*

The first nine mortgages named in the list were not issued by the present corporation. It purchased the property and franchises of the former corporations, subject to the lien of the said mortgages. The other six mortgages were issued by the present corporation. All of the above-mentioned indebtedness was contracted, and the mortgages, and the bonds included in them, were issued and sold in the city and state of New York, to non-residents of Pennsylvania, the principal and interest being payable either there or in London, England, at the option of the holder. The company maintains a financial agency in London, and some of its coupons are there paid, but the most of them are paid at its office in New York city. With the exception of the funded coupon bonds of 1885 and the income bonds, all of the said bonds and mortgages were issued prior to June 30, 1885.

5. So far as the company paid the interest maturing upon the various mortgages during the year ending with the first Monday of November, 1887, it paid the same in full, and did not deduct from said interest and pay into the state treasury, a state tax of three mills, in accordance with the provisions of the fourth section of the act of June 30, 1885. Upon the income bonds amounting to $508,008, no interest was paid, the earnings of the company being insufficient for that purpose.

6. The actual values of the bonds included in the various mortgages ranged, in 1887, from fifteen per cent below, to thirty-five per cent above, their nominal or par value; the first mortgage bonds selling upon the New York stock exchange in November of said year at 119, second mortgage bonds at 111, third mortgage bonds at 105, fifth mortgage bonds at 104, first consolidated mortgage bonds at 135, first consolidated funded coupon bonds at 130, re-organization first lien bonds at 105, second consolidated mortgage bonds at 98¾ to 101½, collateral trust bonds at 104, funded coupon bonds at 84¾ to 89½.

7. The bonds included in the $78,573,485.10 of mortgages are widely scattered, being owned by residents of various states in

the Union, and largely held also in England, Scotland, and other foreign countries. As the bonds are all coupon bonds, and the coupons are seldom presented for payment by the persons owning the bonds, but by messengers of banks and other collection agencies, frequently passing through three or four banks before reaching the office of the company for payment, several thousand coupons being frequently presented for payment in a single day, the bank messengers and other collection agents presenting the coupons for payment seldom knowing the names or residence of the owners of the coupons themselves, it was impossible for the officers of the company, upon the payment of interest, to determine what bonds, if any, were owned by residents of Pennsylvania. They could only have done so by suspending the payment of interest upon all bonds until the ownership of each could have been ascertained, which ascertainment would have required an investigation necessarily consuming several weeks or months of time, entailing expenses and results to avoid which the company deemed it wiser to pay the interest upon all its bonds in full, itself accepting whatever responsibility for taxes due the state of Pennsylvania, which might accrue from said payment, in regard to such bonds as might afterward prove to have been owned by residents of said state.

8. In the report made by the treasurer of the company to the auditor general, it was stated that none of the bonds were known to be owned by residents of Pennsylvania, but subsequent investigations by the officers of the company developed evidence from which we find that $2,378,000 of bonds were owned in Pennsylvania, of which $852,000 were held by individuals and firms, and the balance by corporations.

9. The account settled by the auditor general, from which the appeal in this case was taken, charges a tax of three mills upon all the bonds included in the various mortgages of the company, and is for the year ending with the first Monday of November, 1887.

10. The nominal or par value of bonds and mortgages issued by corporations is no reliable indication or measure of their actual value, which is usually either above or below, and very seldom the same as, their par value; the actual value being dependent upon the value of the property mortgaged, the rate of interest, the date of maturity, and other conditions; some bonds

Decision of Court below.

upon which interest is regularly paid selling as low as 45 cents on the dollar, and others as high as 170. In the case of mortgages issued by individuals, which are taxable at their actual value, the actual and par values more nearly agree, than in the case of those issued by corporations. There are owned by residents of Pennsylvania millions of dollars worth of bonds and mortgages issued by foreign corporations not doing business in this state, the actual value of some of which bonds is above, and of others below, their nominal or par value.

CONCLUSIONS OF LAW.

Most of the questions involved in this appeal have been discussed and decided in the cases of the Delaware Division Canal Company and others, 123 Pa. 594, and require no elaboration here. We hold that,

1. The commonwealth is entitled to a full year's tax upon $852,000 of bonds owned by individuals and firms residing in Pennsylvania.[13]

2. The act of 1885 does not impose a tax upon bonds owned by corporations.

3. The act of 1885 does not impose a tax upon bonds owned by non-residents of Pennsylvania.

All objections specified in defendant's appeal, the affirmance of which would lead to conclusions other than those above stated, are hereby overruled.

It follows from the foregoing conclusions that the commonwealth is entitled to recover—

| | |
|---|---|
| Tax, . . . . . . . . | $2,556.00 |
| Attorney General's commission, . . . | 127.80 |
| Interest at 12 per cent from August 29, 1888 . | 191.70 |
| | |
| Total, . . . . . | $2,875.50 |

for which amount judgment is directed to be entered in favor of the commonwealth, unless exceptions be filed within the time limited by law.

To the foregoing decision the defendant company filed exceptions, specifying that the court erred:

1–10. In overruling the specifications of objection.[1 to 10]

11. In not deciding that it is not within the constitutional authority of the state of Pennsylvania to impose upon a corpo-

ration of the state of New York or upon its treasurer, being a resident of the state of New York, the duty of assessing, in the state of New York, a tax upon bonds and mortgages issued and sold in the state of New York upon the payment of interest made in the city of New York; nor to hold the said company or its treasurer responsible for failure to assess and deduct such a tax from interest paid upon its bonds and mortgages in the city and state of New York; and the act of June 30, 1885, if it shall be construed to authorize the account settled by the auditor general in this case, or any part thereof, is void because in violation of a necessary implication of the constitution of the United States, which confines the power of each state to subjects within its territorial sovereignty, and by reason of which all subjects over which the sovereign power of a state does not extend are exempt from taxation or control by said state.[11]

12. In not deciding that the fourth section of the act of 1885 impairs the obligation of the contract contained in the acts of assembly under which defendant constructed a portion of its railroad in Pennsylvania, and is therefore void, because in violation of paragraph 1 of § 10 of article I. of the constitution of the United States.[12]

13. In the first conclusion of law.[13]

14. In directing judgment for the commonwealth for $2,875.50.

On May 9, 1889, the said exceptions being argued, they were overruled, without opinion filed, and judgment was entered in accordance with the decision. Thereupon the defendant company took this appeal, specifying that the court erred:

1–14. In overruling defendant's exceptions.[1 to 14]

15. In not directing judgment to be entered in favor of defendant.

*Mr. M. E. Olmsted,* for the appellant:

1. The relation of the defendant company to the state has been determined by this court to be that of a foreign corporation: New York etc. R. Co. v. Sabin, 26 Pa. 242; Erie Railway Co. v. Commonwealth, 66 Pa. 84; Commonwealth v. New York etc. R. Co., 114 Pa. 340. In the last named suit it was distinctly charged in the information filed by the attorney

general, that the defendant was a foreign corporation, and as such was indirectly holding lands in Pennsylvania without authority of law, which lands, being held by a foreign corporation were subject to escheat. This view of the matter was sustained by this court. The case before us, therefore, is one in which the state of Pennsylvania seeks to compel a foreign corporation and its officers, all of whom are residents of other states, to act as collectors of state taxes.

2. The tax is not imposed upon the corporation, but upon the holders of its mortgages; the corporation being made the collector of the taxes and the attempt being to hold it responsible for taxes alleged to be due from its creditors, but which it has not collected. "Foreign corporations, exercising their rights and franchises under the laws of other states and countries, are beyond the reach of our processes of taxation. We could not require them to comply with any such regulation of our law, and, therefore, they are necessarily excluded from the provisions of the act. Such foreign corporations as are engaged in business in this state, might doubtless be required to comply, as a condition of their right to do so, but this could only embarrass the action of the local assessor, and upon this ground, doubtless, they are wisely excluded from the operation of the act:" Mr. Justice CLARK, in Commonwealth v. Del. Div. Canal Co., 123 Pa. 594.

3. Bonds held by non-residents are not taxable, and, as to them any law which interferes between the company and the bondholder impairs the obligations of the contract and is void: State Tax on Foreign-Held Bonds, 15 Wall. 300. And although the act of 1885 does not impose a tax upon foreign-held bonds, nevertheless, by compelling a delay in the payment of interest, it does interfere between the company and the non-resident bondholder, and impairs the obligation of the contract to pay the interest upon a certain day. But aside from its effect upon bonds of non-residents, the act cannot be sustained even as to those owned in Pennsylvania. Different sections of the act provide different methods of assessment. Some of the mortgages and evidences of indebtedness are to be assessed by local assessors at their actual value; while another bond worth 150 has a tax equivalent to only two mills on its actual value. [Proceeding, the argument of the counsel in Commonwealth

v. Lehigh V. R. Co., ante, 429, was repeated as to the other questions raised.]

*Mr. William S. Kirkpatrick,* Attorney General, and *Mr. John F. Sanderson,* Deputy Attorney General, for the commonwealth:

1. As to the constitutionality of the act of June 30, 1885, the commonwealth submitted the argument in favor of the commonwealth reported at length in Commonwealth v. Delaware Div. Canal Co., 123 Pa. 606.

2. The fourth section of the act of June 30, 1885, in express terms, applies not only to corporations incorporated by or under the laws of this commonwealth, but also to such as are incorporated by the laws of any other state, or of the United States, and doing business in this commonwealth. The act of 1868 taxed the gross receipts of " every railroad company . . . . . now or hereafter doing business in this state." The Erie Railway Company was held to be within these terms in the case of Erie Railway Co. v. Commonwealth, 66 Pa. 84. This case was affirmed by the case of Erie Railway Co. v. Pennsylvania, 21 Wall. 492. As a consequence, the company is subject to the jurisdiction of Pennsylvania for the purposes of taxation and judicial proceedings, and is subject to all such duties as may be required to be performed by an individual, not a citizen of Pennsylvania, who is for the time being within her borders.

3. The relations of a railroad corporation, incorporated by a foreign state, to a state which permits the construction and maintenance of a portion of its line within it, are fully discussed in Wood's Railway Law, 27, 28, 31–35, 578. It follows from the doctrines therein laid down that a foreign corporation, subject to the jurisdiction of this state, may be required to perform such duties as are imposed upon it by the state. The power of the state to require the performance of the duty in question, from such as are subject to its laws, is fully settled: Commonwealth v. Del. Div. Canal Co., 123 Pa. 594; Paul v. Virginia, 8 Wall. 168; Fire Association v. New York, 119 U. S. 110; Hare's Amer. Const. Law, 666–7.

OPINION, MR. JUSTICE CLARK:

This case came into the Common Pleas of Dauphin county

upon an appeal from a settlement made by the auditor general, etc., for state taxes on corporate loans, under the fourth section of the act of June 30, 1885, for the year 1887. It was tried by the court by agreement of the parties under the act of 1874. The learned judge of the court below found as matter of fact that $2,378,000 of the company's bonds were owned and possessed by residents of Pennsylvania, of which $852,000 were held by individuals, and the residue by corporations. The principal questions raised on this record are ruled by Commonwealth v. Delaware Div. Canal Co., 123 Pa. 594; Lehigh Valley R. Co. v. Commonwealth, and Commonwealth v. Lehigh Valley R. Co., the last two cases decided at this term and not yet reported [ante, 429]. The only remaining question for our consideration is, whether or not the defendant company, being a foreign corporation, is liable to be charged with state taxes at the rate of three mills on the dollar on their bonds held by individuals and firms resident within the state, as above stated.

The New York, Lake Erie & Western Railroad Company is a corporation of the state of New York. It was originally incorporated in the year 1832, as the New York & Erie Railroad Company, with power to construct a railroad from the city of New York to Lake Erie, through the southern counties of the state of New York. To avoid certain engineering difficulties, the company was afterwards authorized by the legislature of Pennsylvania, under certain restrictions, to build a specific portion of its road through the counties of Pike and Susquehanna, in this state: Acts of February 16, 1841, P. L. 28, and March 26, 1846, P. L. 179; the said company, by the act of 1846, being required to pay to the state of Pennsylvania, after the completion of the road, the sum of $10,000 annually. The property and franchises of the New York & Erie Railroad Company afterwards became vested in the Erie Railway Company, and, in 1878, in the New York, Lake Erie & Western Railroad Company. A portion of the defendant's road was made and is still maintained within the limits of this state, and since the completion and equipment of the road regular payment has been made by the company to the commonwealth of the said sum of $10,000 annually, pursuant to the provisions of the several acts of assembly already referred to. Although

a corporation of another state, and, therefore, a foreign corporation, the company is doing business in this state. By a certificate filed in the office of the secretary of the commonwealth, pursuant to the act of 22d April, 1874, the defendants have designated a place of business and an agent to represent them; they are, therefore, not only duly authorized but, in the operation of their road, they are actually engaged in doing business within the limits of this state.

The fourth section of the act of 1885 applies not only to all private corporations, created by and under the laws of this state or of the United States, but to such as are doing business in this commonwealth. The several questions raised by the assignments of error, from the first to the ninth inclusive, as we have already said, have been discussed and decided in the case of Commonwealth v. Delaware Div. Canal Company, 123 Pa. 594, and the case of the Commonwealth v. The Lehigh Valley Railroad Company, argued at the present term, [ante, 429,] and will not be further considered here.

The only questions raised by the remaining assignments are, first, whether the provision of the fourth section of the act of 1885, so far as it applies to foreign corporations doing business in this state, is a proper exercise of legislative power; and, second, assuming this to be so, whether there is anything in the said provision by which the defendant road was permitted to pass through the counties of Pike and Susquehanna, which would exempt the company from the obligation of this act.

Upon the first question suggested there can, we think, be but little room for discussion. In the Delaware Div. Canal Company case, already referred to, we said:

" Foreign corporations, exercising their franchises under the laws of other states and countries, are beyond the reach of our processes of taxation. We could not require them ordinarily to comply with any such regulation of our law, and, therefore, they are necessarily excluded from the provisions of the act. Such foreign corporations as are engaged in business in the state might doubtless be required to comply as a condition of their right so to do, but this could only embarrass the action of the local assessor, and upon this ground, doubtless, they were wisely excluded from the operation of the act."

The last member of the concluding sentence of the paragraph

quoted is a mere inadvertence. The fourth section of the act of 1885 does in terms embrace such foreign corporations as are engaged in business in this state, and the question now to be considered is, whether or not such a provision as respects the New York, Lake Erie & Western Railroad Company is a proper exercise of the legislative power of the state. The general statement that foreign corporations are ordinarily beyond the reach of our processes of taxation is undoubtedly correct, but when a foreign corporation comes into Pennsylvania and engages in business here, undoubtedly it does so subject to the general policy of, and the course of legislation in the state: Runyan v. Coster, 14 Pet. 122. A foreign corporation can exercise its franchises in Pennsylvania only so far as it may be permitted by the local sovereign. The right rests wholly in the comity of the states: Paul v. Virginia, 8 Wall. 168. A corporation of one state cannot do business in another state without the latter's consent, express or implied, and that consent may be accompanied with such conditions as the latter may think proper to impose: St. Clair v. Cox, 106 U. S. 350. These conditions will be valid and effectual, provided they are not repugnant to the constitution or laws of the United States, inconsistent with the jurisdictional authority of the state, or in conflict with the rule which forbids condemnation without opportunity for defence: Lafayette Insurance Co. v. French, 18 How. 404; Doyle v. Insurance Co., 94 U. S. 535; Pembina Mfg. Co. v. Pennsylvania, 125 U. S. 181.

It was competent for the legislature of Pennsylvania to impose as a condition upon foreign corporations doing business in this state that they shall assess and collect the tax upon that portion of their loans in the hands of individuals resident within this state, and otherwise comply with the provisions of the act of 1885. The act imposes no tax upon the company; it simply defines a duty to be performed and fixes a penalty for disregard of that duty. The legislature having so provided, compliance with the act may, in some sense, be said to form one of the conditions upon which corporations may do business within the state, and the corporation continuing its business subsequently would be taken to have assented thereto.

There is, however, a condition, implied even in the case of domestic corporations, that they will be subject to such reasonable

regulations, in respect to the general conduct of their affairs, as the legislature may from time to time prescribe, and such as do not materially interfere with or obstruct the substantial enjoyment of the privileges the state has granted: Chicago v. Needles, 113 U. S. 574. If this be so as to corporations who are entitled to their charter privileges upon the footing of a contract, how much the more is it so as to corporations who are merely permitted by the legislature to do business within this state as a matter of grace and not of right? But it is said that the enforcement of the fourth section of the act of 1885 against the defendant corporation would impair the obligation of the contract existing between the commonwealth and the company, as set forth in the private statutes of 1841 and 1846 already referred to. Apart from these statutes the defendant had the right by the comity of the states to contract and to sue within the state of Pennsylvania, but could exercise no extraordinary franchises or special privileges granted by the state incorporating it, as, for instance, the right to eminent domain, or the privilege of exemption from taxation: State v. Boston etc. R. Co., 25 Vt. 433 ; Middle Bridge Co. v. Marks, 26 Me. 326 ; Taylor on Corp., 386. It was for the exercise of this extraordinary privilege and power of the state, the annual payment of $10,000 was stipulated. There is nothing in the act to indicate that this sum was paid in lieu of taxes, or for exemption from any duty which might otherwise be imposed upon the company, but for the privilege of exercising the right of eminent domain in the location of their road through the counties mentioned, under restrictions particularly specified. The effect of these acts of 1841 and 1846 was not to declare the company a corporation of the commonwealth, but, as Mr. Justice THOMPSON said in New York & Erie R. Co. v. Young, 33 Pa. 175, "for the purposes of these acts the rights involved are to be tested and judged by the same rules of law as if the company had been primarily incorporated by this commonwealth. So far as the road runs through this state under the privileges granted to it, the company is a quasi Pennsylvania corporation. The right of eminent domain, within the restrictions of the grant, was as fully conferred on them by the act of February 16, 1841, as it ever is conferred on corporations exclusively within the state, and their rights and duties under the privileges granted

must be ruled by the same principles." One state may make a corporation of another state, as there organized and conducted, a corporation of its own, quoad property within its territorial jurisdiction : Railroad Co. v. Harris, 12 Wall. 65–82; Graham v. Railroad Co., 118 Pa. [?] 168. Thus it will be seen that the defendant exercises powers and franchises which they have received directly from the legislation of Pennsylvania; that a part of their property is actually within the limits of this state, and receives the protection of our laws, and there is no good reason why the company should not be held subject to the same regulations as corporations of our own state. We are of opinion that on this branch of the case the court was right.

The judgment is affirmed.

