# COMMONWEALTH v. NEW YORK, L. E. & W. R. CO.

APPEALS BY PLAINTIFF AND DEFENDANT FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 2, 1891—Decided June 12, 1891.

(*a*) On appeal from an official settlement of an account against a foreign corporation, doing business in this state, for tax on its scrip, bonds, etc., under § 4, act of June 30, 1885, P. L. 194, there was no evidence that its bonds, etc., other than those which made up a certain amount, were held by resident owners.

(*b*) Nor was there evidence that, at the time the coupons were paid, the company's treasurer could know that any, and if any what ones, other than those belonging to the bonds referred to, belonged to bonds held by residents; but there was evidence that of bonds registered for voting a certain amount was held by resident owners:

1. The question of the existence of taxable property, is not a question of

Statement of Facts.

proportion. Hence, it is not to be assumed that, if all the company's outstanding bonds were registered, the same proportion belonging to residents would hold, and that defendant should be taxed upon the resulting proportion of the entire indebtedness.*

2. The liability of the New York, L. E. & W. R. Co., a foreign corporation, for a state tax, under § 4, act of June 30, 1885, P. L. 194, upon its corporate indebtedness shown to be held by resident owners, re-affirmed: See Commonwealth v. New York, L. E. & W. R. Co., 129 Pa. 463, and Commonwealth v. Lehigh V. R. Co., 129 Pa. 429.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.,

Nos. 21, 34 May Term 1891, Sup. Ct.; court below, No. 81 January Term 1890, C. P.

To the number and term of the court below, from an account settled by the auditor general and state treasurer against the New York, Lake Erie & Western Railroad Company, for tax on scrip, bonds and certificates of indebtedness, under § 4, act of June 30, 1885, P. L. 194, for the year ending the first Monday of November, 1888, to wit:

Nominal value of scrip, bonds and certificates of indebtedness, owned by residents
of Pennsylvania,  .   .   .   .   $78,573,485.10

Tax, three mills,  .   .   .   .   .   235,719.46

Deduct treasurer's commission,  .   .   1,228.60

Due Commonwealth,   .   .   .   $234,490.86
the company filed an appeal and specifications of objections.

Among other testimony upon the subject, taken by deposition and filed, it was admitted by officers of the company that inquiry had not been made to ascertain the amount of its bonds held by owners resident in the state; the treasurer testified however, that there were at least one hundred and sixty thousand coupons to be paid in the course of the year: "Q. Do those coupons usually come in at the interest periods in great numbers? A. I estimate that we have paid as high as twenty thousand coupons in a day. Q. What would you say as to the possibility of your ascertaining the ownership of the bonds from which those twenty thousand coupons were cut? A. I should ·

---

* Cf. Commonwealth v. Salt Co., ante, 53.

Decision of Court below.

say it would be impossible, entirely impracticable to do it. I think the parties presenting them would decline to take the trouble to give us the information, and would demand the money for the coupons due, and, if they were not paid, would protest them. Q. Could you make any sort of an investigation without stopping the payment of the interest entirely until you had completed it? A. It would block the payment. Q. Block the payment of the interest on the entire loan? A. Yes."

The cause having been heard on a submission to the court, without a jury, under the act of April 22, 1874, P. L. 109, the court, SIMONTON, P. J., filed the following decision:

FINDINGS OF FACT.

1. Defendant is a corporation chartered by the state of New York, and having its principal office and place of business in the city of New York. It has and exercises the right of way, under a special act of the legislature of the state of Pennsylvania, to run its railroad for somewhat more that thirty miles through the state of Pennsylvania, for which it pays annually to the state the sum of ten thousand dollars.

2. The settlement appealed from is based upon a report made by the treasurer of defendant to the auditor general of Pennsylvania, for the year 1888, which contains a detailed statement of the several issues of bonds, scrip and certificates of indebtedness by defendant and the corporation whose successor it is, amounting in all to $78,573,485.10, in which it is stated that none of the indebtedness is known to be owned by residents of Pennsylvania, and that it is believed by the officers of the company that nearly all is owned by non-residents of Pennsylvania.

3. In the settlement appealed from, defendant is charged with tax upon the nominal value of all the scrip, bonds and certificates of indebtedness issued by it and the corporation whose successor it is, and owned by it, amounting to the sum of $78,573,485.10, as stated in said report.

4. All the evidences of indebtedness owing by defendant were created and issued under authority granted by the legislature of the state of New York, and were issued, sold and delivered in the city of New York, in said state, or in London, England; and the interest accruing from time to time thereon

Decision of Court below.

is payable and paid in the said city of New York and in London. The right to the interest is evidenced by coupons payable to bearer, which, when due, are separated from the bonds and are presented for payment at the office of defendant in the city of New York, by banks, bankers and their messengers, on behalf of themselves and their correspondents in other places, by whom the coupons have been transmitted either as cash or for collection ; and [it is practically impossible for the treasurer or other officers of defendant, at the time the coupons are presented, to ascertain the residences of the owners of the bonds from which they have been separated, because of the large numbers of coupons presented at the dates when they become due, the whole number of coupons due semi-annually amounting to more than one hundred and fifty thousand, and as many as twenty thousand being presented in a single day ; (and, for the further reason, that the bankers and their messengers, when they present the coupons, in very many instances, do not know who are the owners of the bonds from which they have been detached, and could not be compelled to disclose if they did know, as the coupons are payable to bearer ; and a refusal of the treasurer of the company to pay the coupons on presentation, except upon condition of the ownership being disclosed, would subject it to the risk and expense and loss of credit of having the coupons protested for non-payment.) [2] ] [1]

Some of the evidences of indebtedness are coupon bonds issued and payable to bearer, and others are coupon bonds which may be registered or not at the option of the holders or owners.

5. Holders of the evidences of indebtedness of defendant are entitled to vote for directors of the company ; and a register is kept in the office of defendant in which all holders of such evidences of indebtedness are required to register between sixty and thirty days prior to any election for directors at which they desire to vote. This register for the year 1888, shows an ownership of bonds to the amount of $28,562,700, of which we find that $338,000 were owned by residents of Pennsylvania, but this ownership does not appear on the register.

6. A record of registered bonds is also kept in the office of defendant, and in 1888 there were registered $11,124,300 in value of bonds. Of this amount $2,054,000 were owned by residents of Pennsylvania, $1,551,000 of which were owned by

Decision of Court below.

Pennsylvania corporations, leaving $503,000 which were owned by individual residents of Pennsylvania.

7. [There is no evidence in the case from which we could find that any particular bonds, other than those which make up the two amounts of $338,000 and $503,000, as above stated, were held or owned during the year 1888 in Pennsylvania; nor is there any evidence tending to show that the treasurer of defendant, at the time the coupons were paid, could know that any, and if any, which of the coupons, other than those which belonged to the bonds above specified, belonged to bonds held or owned in this state; and we therefore do not find that there were any other bonds, or any greater amount of bonds, held in Pennsylvania, during the year for which the tax is claimed in this settlement, than the bonds specified in findings of fact numbers five and six.] [3]

DISCUSSION.

As we have stated in the findings of fact, the settlement appealed from charges defendant with tax upon the nominal value of its whole indebtedness. We do not, however, understand the learned attorney general to claim that defendant should be held for tax upon the whole amount. His argument, if we rightly apprehend it, is that in some sense the burden of proof is upon the defendant, to this extent at least: That as the register of voters shows that out of $28,562,700 in nominal value of bonds, $338,100 in value are owned by residents of Pennsylvania, the court ought to presume that if all were registered for voting the same proportion would hold, and therefore that defendant should be charged with tax upon the resulting proportion of the whole amount of its indebtedness. And further, that as the record of registered bonds shows that of $11,124,300 in nominal value, $2,054,000 are held by residents of Pennsylvania, the result of the same process of apportionment should be applied.

It is to be noted, however, that of the $2,054,000 shown by the record of registered bonds to be held by residents of Pennsylvania, $1,551,000 are held by Pennsylvania corporations, and are therefore not taxable, so that this registry shows only a taxable Pennsylvania ownership of $503,000.

But the question of the existence of taxable property is not a question of proportion. Only bonds held in Pennsylvania

Decision of Court below.

are taxable. The act of 1885, under which this tax is claimed, makes it the duty of the treasurer of defendant to assess and retain the tax when payment of interest is made on all such bonds, and to report the amount thereof " as nearly as the same can be ascertained," and if he fails to perform this duty, the defendant is liable for the tax which he has thus failed to retain ; but the act nowhere makes the defendant liable to tax on bonds not held or owned in the state, because it has failed in its duty with respect to those so held. The utmost liability it can incur is to pay the tax on such bonds as are owned in the state, with the penalty for failure to retain and report, where this is charged in the settlement. And, therefore, before this liability can be imposed, the particular bonds, and not merely the amount of bonds so held, must be in some legal manner ascertained.

The argument of the learned attorney general leaves wholly out of view this most important element of the case, that the duty and the right to retain the amount of the tax, on payment of the interest, is a duty and a right which attaches to each individual bond and its coupons, and not to the bonds and coupons in the mass. That is to say, it is not the duty of the treasurer, and he has not the right, to deduct the tax from any given coupon, unless the bond, with the corresponding number to which the coupon belonged, is held in Pennsylvania. Hence, even if he knew that say $100,000 in amount of the bonds were held within the state, he could not legally deduct the tax from any of the coupons presented for payment, unless they belonged to the particular bonds so held.

Therefore, if we were to hold the defendant liable to any part of the tax claimed in this settlement, on the inference or presumption that some of the bonds are held in Pennsylvania, without proof which particular bonds are so held, we should require it to pay to the state a tax which it could not possibly retain or collect from the bondholders, upon whom, and not upon the defendant, the tax is imposed. This would be such a monstrous injustice, and so entirely unwarranted by any fair construction of the act, that we cannot possibly so hold.

—Citing Commonwealth v. Railroad Co., 140 April Term 1881, opinion by Pearson, P. J.; Commonwealth v. Railway Co., 74 Pa. 83 ; Hinchman v. Railroad Co., 5 Pa. C. C. R.

632; and referring specially to Commonwealth v. Manor Gas Coal Co., 37 September Term 1888, C. P., the opinion proceeded:

But there is a marked difference between the facts in that case and in this. There the defendant was a local Pennsylvania coal company having an indebtedness of $170,500 secured by mortgage upon its real estate; here it is a New York corporation owning and operating a railroad extending from the city of New York to Buffalo, with an indebtedness of over seventy-eight million dollars. There the defendant's bonds had all been issued and sold in Pennsylvania; here they were all issued and sold outside of the state of Pennsylvania, and some of them in London, England. There the defendant had not, up to the time of the trial, made any effort to ascertain the residence of any one of the holders of its bonds; here defendant had made such effort, and has shown upon the trial that nearly one million dollars in nominal value thereof are held in Pennsylvania. We do not see how, on these facts, we can presume the ownership of bonds within the state, and hold defendant liable to tax upon them; and, especially, when there is not a scintilla of evidence on which we could base the presumption that any particular bonds are so owned, or that the treasurer of defendant, when paying the tax, could or ought to have known that any given coupons presented to him for payment belonged to bonds so owned.

The act imposes the tax on "any scrip, bonds or certificates of indebtedness issued by said corporation to residents of this commonwealth, and held by them." A strict construction of this act would confine the liability to securities issued to and held by residents of the state. But, while this would be a reasonable construction of the language of the act, it is fair to assume that the intent was to tax all the bonds actually owned and held within the state, whether issued to residents or not, and it must be so construed. If, however, we are to give any force whatever to the phrase "issued by said corporation to residents of the state," it must, at least, have the effect of suggesting that the fact, whether the bonds were issued to residents or non-residents, furnishes a starting point in the inquiry whether they are held within the state or not, and that where they were issued out of the state to non-residents and have not

Decision of Court below.

been shown, by either the commonwealth or defendant, to be owned by residents, we. cannot presume it in order to hold defendant liable for tax in respect of them ; while, at the same time, if they had been originally issued in the state to residents, it might be fair to presume, in the absence of proof, that the ownership had not changed and that they were still held by them. And when the presumption applies to all the bonds, the difficulty or inability to fix the situs of the ownership of any particular bond would not arise ; and this was the fact in the case of the Commonwealth v. Manor Gas Coal Company.

As was said in Loughlin's App., 19 W. N. 517, cited in Commonwealth v. Railroad Co., 129 Pa. 451 : " We do not think it is the proper function of the judiciary department of the government to impose taxation, which is a species of confiscation, by a strained construction of doubtful legislation. The proper remedy for that kind of difficulty is legislation which is not doubtful." If the legislature choose to say that the corporation shall be liable for the tax on all bonds which it cannot prove to be held outside of the state, if it does not deduct the tax therefrom on payment of the interest, it can do so ; until it does, we do not think it is the duty, or even the right, of the courts to read such a provision into the act as it now stands. We think the true principle upon which taxing acts should be construed is stated in Cooley on Taxation, 2d ed., 274, as follows :

" If there should be any leaning in such cases, it would seem that it should be in the direction of the presumption that everything is expressed in the tax laws which was intended to be expressed. The laws are framed by the government for its own needs, and if imperfections are found to exist, the legislature, in the language of Mr. Dwarris, is at hand to explain its own meaning, and to express more clearly what has been obscurely expressed. But there can be no propriety in construing such a law, either with exceptional strictness amounting to hostility, or with exceptional favor beyond that accorded to other general laws. It is as unreasonable to sound a charge upon it as an enemy to individual and popular rights, as it is to seek for sophistical reasons for grasping and holding by its authority every subject of taxation which the drag net of the official force has brought within its supposed compass. The construction, without bias or prejudice, should seek the real

Decision of Court below.

interest of the law; and if the leaning is to strictness, it is only because it is fairly and justly presumable that the legislature, which was unrestrained in its authority over the subject, has so shaped the law as, without ambiguity or doubt, to bring within it everything it was meant should be embraced."

### CONCLUSIONS OF LAW.

1. Defendant is liable for the tax in respect of the $841,000 of bonds held and owned in 1888 in Pennsylvania.[8] [a]

2. Defendant is not liable for tax on any other or greater amount of bonds than said $841,000, and the settlement appealed from, so far as it charges defendant with tax on any other or greater amount of its indebtedness, is erroneous and illegal.[9]

3. The commonwealth is entitled to judgment in this case as follows :

| | |
|---|---|
| Tax, three mills on $841,000.00,   .   .   . | $2,523.00 |
| Interest at twelve per cent from October 15, 1889, to December 17, 1890,   .   .   . | 355.57 |
| Attorney general's commission at five per cent., | 116.25 |
| Total,   .   .   .   .   .   .   . | $2,994.82 |

for which amount judgment is directed to be entered, if exceptions be not filed within the time limited by law.

—To the foregoing decision, the commonwealth filed exceptions alleging that the court erred :

1–3. In the findings of fact embraced in [  ] [1 to 3]

4. In not finding as a fact, based upon the undisputed testimony of the defendant's witnesses, that the defendant company made no inquiry, or effort in any way, to gain information as to the holders of its scrip, bonds and certificates of indebtedness, for purposes of the taxing statute in question.[4]

5. In not holding, as matter of law, that, inasmuch as the defendant company resists in this suit any liability whatever, to perform the duties enjoined by the fourth section of the act of June 30, 1885, and has neglected and refused to perform any duties thereunder, particularly in failing to make any inquiry as to the residence of the holders of its bonds, scrip and evidences of indebtedness, it is subject to the operation of any reasonable presumption, founded upon the evidence, which affords a reasonable basis of estimating and ascertaining the

amount of its bonds, scrip and evidences of indebtedness held by residents of Pennsylvania.[5]

6. In not holding, in connection with the matters stated in the last foregoing exception, that the proportion of bonds registered upon the voting and ownership registers, held by residents of Pennsylvania, as compared with the total amount of bonds registered, was a fair basis upon which to found the presumption, as matter of fact, that all the bonds, scrip and evidences of indebtedness issued by the defendant corporation, were held in the same proportion by residents of Pennsylvania.[6]

7. The learned court erred in not finding, as matter of fact, that $\frac{23932}{39687}$ of the bonds, scrip and evidences of indebtedness issued by the defendant, amounting to $4,735,751.66, were held by the residents of Pennsylvania.[7]

8, 9. In the conclusions of law.[8] [9]

10. In not entering judgment in favor of the Commonwealth, for tax at the rate of three mills on $4,735,751.66, amounting to $14,207.25, with interest and attorney general's commissions.[10]

The defendant company filed exceptions, alleging that the court erred:

1–3. [ In not finding certain facts. ]

4–12. [ In not finding, as a conclusion of law, that the act of June 30, 1885, P. L. 193, particularly the fourth section thereof, as sought to be applied to the defendant company in this case, was unconstitutional, as violative of certain provisions of both the state and national constitutions.]

13. In the first conclusion of law.[a]

14, 15. In directing judgment to be entered for plaintiff for $2,994.82,[b] and in not directing judgment to be entered for the defendant.[c]

Said exceptions having been argued, the court, SIMONTON, P. J., filed the following opinion and decree :

Plaintiff's exceptions numbers one, two and three are overruled.

Plaintiff's exception number four. We cannot sustain this exception. On the contrary, we find that the defendant did endeavor to find what bonds were held in Pennsylvania, and that it, and not the commonwealth, furnished the evidence on which we have found that the bonds, which we have decided to

Arguments.

be taxable, were held in Pennsylvania.    This exception is there-
fore overruled.[11]

In answer to plaintiff's exceptions numbers five, six and seven,
we say that we have pointed out in the opinion to which these
exceptions are filed, that " the argument of the learned attorney
general leaves wholly out of view this most important element
of the case, that the duty and the right to retain the amount
of the tax on payment of the interest is a duty and a right
which attaches to each individual bond and its coupon, and
not to the bonds and coupons in the mass; " to which we now
add, that the position of the commonwealth is practically that
repudiated by the Supreme Court in Philadelphia v. Cochran,
34 Leg. Int. 160, and by this court in Philadelphia v. Mackey,
2 Pears. 406 ; Commonwealth v. Blair Co., 2 Pears. 415 ; Com-
monwealth v. Butler Co., 2 Pears. 421, and Commonwealth v.
Philadelphia, 14 W. N. 371, in all of which it was held that
subjects of taxation cannot be added to the assessment list,
where the owners who are liable to pay the tax thereon cannot
be ascertained.    These exceptions are therefore overruled.
Exceptions eight, nine and ten are also overruled.

Defendant's exceptions numbers one, two and three are to
the effect that the court erred in not finding certain facts stated
in said exceptions.    We find the facts to be as stated in these
exceptions, although we consider them immaterial.    All the
other exceptions filed by defendant are overruled ; and judg-
ment is ordered to be entered as directed in the opinion here-
tofore filed.

—Thereupon, the commonwealth took the appeal to No. 21
specifying that the court erred :

1–10. In overruling the commonwealth's exceptions.[1 to 10]

11. In its ruling on the commonwealth's fourth exception.[11]

The defendant took the appeal to No. 34, specifying that the
court erred, inter alia :

13–15. In overruling defendant's exceptions.[a to c]

*Mr. James A. Stranahan,* Deputy Attorney General, (with
him *Mr. W. U. Hensel,* Attorney General,) for the Common-
wealth, appellant in No. 21.

As to the legislative and judicial history of taxation on cor-
porate indebtedness, counsel cited: Commonwealth v. Chester

City, 123 Pa. 626 ; Maltby v. Railroad Co., 52 Pa. 140 ; Del.
etc. R. Co. v. Commonwealth, 66 Pa. 64 ; State Tax on Foreign-
held Bonds, 15 Wall. 300 ; Commonwealth v. Railroad Co.,
104 Pa. 89 ; Commonwealth v. Canal Co., 123 Pa. 594 ; Com-
monwealth v. Railroad Co., 129 Pa. 463 ; Commonwealth v.
Railroad Co., 129 Pa. 429 ; Coal Ridge Imp. Co. v. Jennings,
127 Pa. 397 ; Bell's Gap R. Co. v. Pennsylvania, 134 U. S.
232 ; Commonwealth v. Coal & Iron Co., 137 Pa. 481.    That,
whether the proper inferences have been drawn from facts in
evidence, is a matter for consideration here : Phillips's App.,
68 Pa. 130 ; Cake's App., 110 Pa. 65 ; Sproull's App., 71 Pa.
137 ; Moyer's App., 77 Pa. 482 ; Hindman's App., 85 Pa. 467 ;
as in Commonwealth v. Iron & Coal Co., 129 Pa. 346, 355 ;
Commonwealth v. Rolling-Mill Co., 129 Pa. 360, 364.    That,
the defendant having failed, in violation of the statute, to as-
certain certain facts at the only time and in the only manner in
which they were capable of ascertainment, thus having put it
out of its own power and the power of the commonwealth to
prove the true amount of liability, it is subject to the operation
of any reasonable presumption founded upon the evidence :
Armory v. Delamire, 1 Sm. L. C., 7th Am. ed., 636, 642 ;
Taylor on Ev., 131, 132.

*Mr. M. E. Olmsted*, for the appellee in No. 21.

Counsel cited : (1) Fox's App., 112 Pa. 337 ; Hunter's App.,
18 W. N. 411 ; Loughlin's App., 19 W. N. 517 ; Commonwealth
v. Canal Co., 123 Pa. 594, 618, 625 ; Commonwealth v. Stand-
ard Oil Co., 101 Pa. 119, 150 ; Commonwealth v. Railway Co.,
74 Pa. 83, 94 ; Philadelphia v. Mackey, 2 Pears. 406 ; Common-
wealth v. Blair Co., 2 Pears. 415 ; Commonwealth v. Butler
Co., 2 Pears. 421 ; Commonwealth v. Philadelphia, 14 W. N.
371.    (2) Commonwealth v. Hulings, 129 Pa. 317, 323.

*Mr. M. E. Olmsted*, for the appellant in No. 34.

That § 4, act of June 30, 1885, P. L. 194, does not impose
any tax upon corporations, but requires their treasurers to act
as the agents of the state in the assessment and collection of a
tax imposed on the bondholders, counsel cited : Commonwealth
v. Canal Co., 123 Pa. 594, 618.    That the relation of defend-
ant company to the state is that of a foreign corporation, and

it is not liable to the tax constitutionally: New York etc. R. Co. v. Sabin, 26 Pa. 242; Erie Ry. Co. v. Commonwealth, 66 Pa. 84; Commonwealth v. Railroad Co., 114 Pa. 340; Hartman v. Greenhow, 102 U. S. 684; McCulloch v. Maryland, 4 Wheat. 316; St. Louis v. Ferry Co., 11 Wall. 430; Delaware R. Tax Case, 18 Wall. 206, 229; Bank of Augusta v. Earle, 13 Pet. 519.

*Mr. Jas. A. Stranahan*, Deputy Attorney General, (with him *Mr. W. U. Hensel*, Attorney General,) for the Commonwealth, appellee in No. 34.

Counsel cited: Commonwealth v. Railroad Co., 129 Pa. 463.

COMMONWEALTH'S APPEAL.

PER CURIAM:

We are unable to sustain any of the commonwealth's assignments of error to the findings of fact by the learned judge of the court below. Such findings are entitled to the weight of the verdict of a jury: Commonwealth v. Railroad Co., 37 Leg. Int. 407; Commonwealth v. Railroad Co., post, 74, decided herewith, and have not been shown to have been incorrect. With the facts thus found, the conclusions of law of the court below necessarily follow. None of the assignments is sustained.

Judgment affirmed.

DEFENDANT'S APPEAL.

PER CURIAM:

This case is ruled by Commonwealth v. Railroad Co., 129 Pa. 463. See also, Commonwealth v. Railroad Co., 129 Pa. 429. A further discussion of the subject is not needed.

Judgment affirmed.