## Alison's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*John Hayes, Irvin Stander, Edward S. Morris, Abraham Wernick* and *Joseph Sharfsin,* for exceptants.

*Howard Burtt,* contra.

KLEIN, J., August 11, 1939.—Decedent, a resident of Philadelphia, died in 1936, possessed of certain bonds issued by two foreign corporations, which were doing business in Pennsylvania, but whose treasurers did not reside in this State. A claim was presented at the audit of the executors' account by the County of Philadelphia for personal property tax assessed under the provisions

of the Act of June 17, 1913, P. L. 507, and its supplements. The Commonwealth of Pennsylvania also presented a claim for personal property tax on the bonds by virtue of the Personal Property Tax Act of June 22, 1935, P. L. 414, as amended by the Act of July 17, 1936, P. L. 51. There is no dispute as to the factual situation, which is set forth in a stipulation which has been entered into by all of the parties in interest. The stipulation also contains an agreement that the valuations and the assessments made therein are proper for the years specified, provided the bonds are subject to taxation. The accountants, however, contend that neither the county nor the State has authority to enforce the collection of the taxes which have been assessed. The learned auditing judge sustained this contention and dismissed both claims. Exceptions were taken to this ruling by both the county and the Commonwealth.

A review of the history of personal property tax legislation in this State will be helpful in solving the questions raised by the exceptions. Such a study may be found in the scholarly opinion of President Judge Hargest of Dauphin County in Commonwealth v. Jacob Reed's Sons, Inc., 25 Dauph. 117 (1922).

The first personal property tax is found in section 32 of the Act of April 29, 1844, P. L. 486. This tax was solely for State purposes and was assessed by the county commissioners at the rate of three mills on every dollar of the value of the property made liable to the tax. In time it became apparent to the legislature that the collection of the tax would be greatly facilitated if the officers of the corporation were designated as collecting agents for the State and compelled to deduct the tax from the interest paid by the company to the holder of its obligations. This procedure was first introduced by section 3 of the Act of April 30, 1864, P. L. 218. "Thereupon", Judge Hargest points out, at page 119, "arose the distinction, which has since been maintained, between the personal property tax and the tax on loans, the one referring to the loans or

obligations issued by corporations, the other to personal property which is not in that class."

In 1913 the legislature made a radical departure from its long-established system with respect to personal property taxation. For the first time it diverted a portion of the tax to the counties for local use. The Act of 1913, supra, sec. 1, makes provision for the retention by the counties of the tax collected on a list of enumerated items of personal property. The assessment is made by the county authorities and the tax is fixed at the rate of four mills on every dollar of property liable to the tax. Under section 17 of this act, the State retains for its own use the corporate loans tax, which is to be collected by the treasurers of the various companies under the provisions of section 4 of the Act of June 30, 1885, P. L. 193, which remained in effect unchanged. This tax was at the rate of four mills on each dollar of the nominal value of the property in contrast to the assessment on the assessed value under section 1.

We find that, under section 1 of this act, the tax is imposed upon *all* bonds issued by foreign corporations owned by residents of this State, "except such loans as are made taxable for State purposes by section seventeen hereof". Referring to section 17, we find that the bonds issued by foreign corporations doing business in this Commonwealth are made taxable under that section for State purposes. Section 17 provides further:

"That none of the classes of property made taxable by this section for State purposes shall be taxed or taxable for county, school, or other local purposes."

The following provision was added by the amending Act of July 15, 1919, P. L. 955:

"It is the intent of this act that all scrip, bonds, certificates, and evidence of indebtedness made taxable under this section are not taxable under section one (1) of the act to which this is an amendment, and that only such scrip, bonds, certificates, and evidences of indebtedness

which cannot be made taxable under this section are to be taxed under section one (1) of said act."

Counsel for the accountants argue that, since the bonds in question have been made taxable under section 17, the tax imposed under section 1 cannot be levied upon them. They argue, further, that the fact that the tax imposed under section 17 cannot be legally enforced or collected by the State is immaterial. There is much plausibility in this argument and much can be found in the dicta in the decided cases which seem to give support to it. However, after carefully considering the entire problem, we have reached the conclusion that this result was not contemplated by the legislature and is contrary to its manifest intention.

Much water has gone over the dam and many changes have occurred in American life since the enactment of the Act of 1864, supra. In those days corporations, like individuals, stayed at home. The rapid changes in our mode of living, brought about by the railroad, the telephone, the automobile, the radio, and other scientific advances, brought with them big business and big corporations. Corporations now, regardless of the location of the principal office, do business in every State in the Union. This has resulted in many intricate tax involvements, and the legislatures have had difficulty in keeping abreast of the changing situations which have been created.

One of the lessons which our lawmakers learned was that they had no right or authority to compel a nonresident officer of a corporation, which was doing business in this State, to act as its agent for the collection of taxes. Such an attempt was made under the provisions of section 4 of the Act of 1885, supra, against a railroad doing business in Pennsylvania but whose treasurer resided in another State. The right to collect the tax was sustained by the Supreme Court of Pennsylvania in Commonwealth v. New York, Lake Erie & Western R. R. Co., 129 Pa. 463, but on appeal to the United States Supreme Court this decision was reversed in New York, Lake Erie & Western R. R. Co. v. Pennsylvania, 153

U. S. 628 (1894). The United States Supreme Court held that the tax could not be imposed consistently with the Constitution of the United States. Mr. Justice Harlan, in the opinion of the court, said at page 646:

"No principle is better settled than that the power of a State, even its power of taxation, in respect to property, is limited to such as is within its jurisdiction."

See also Delaware & Hudson Canal Co. v. Pennsylvania, 156 U. S. 200 (1895), Commonwealth v. Barrett Mfg. Co., 246 Pa. 301 (1914), and Commonwealth v. American Ice Co., 1 D. & C. 122 (1921).

We can therefore reasonably assume that the legislature realized in 1913 that many cases would arise in which large corporations doing business in this State, with millions of dollars of their bonds and other obligations in the hands of our residents, would be beyond reach of the corporate loans tax. It was but natural for it to take measures to meet this situation, especially since it was well settled that the personal property tax was not a tax on the corporation but a levy on the resident holder of its obligation: Commonwealth v. Lehigh Valley R. R. Co., 104 Pa. 89 (1883); Commonwealth v. Lehigh Valley R. R. Co., 186 Pa. 235 (1898); Commonwealth v. Barrett Mfg. Co., supra; Commonwealth ex rel. v. Sun Oil Co., 294 Pa. 99 (1928).

In our opinion the legislature by enacting the Act of 1913 attempted to coördinate the personal property tax and the corporate loans tax into a complementary system of taxation whereby all obligations issued by domestic or foreign corporations, owned by residents of this State, would be subjected to either one or the other of the taxes. If the tax can be collected directly from the corporation, then such tax belongs to the State, and the obligations cannot be taxed by the counties. But if the State, for any reason, cannot legally enforce collection of the tax through the company, then in such case the county has the right to assess a tax on the value of the obligations

in the hands of the resident owner. To hold otherwise would render meaningless the plain language of the statute.

There is no merit to the contention that, because the bonds of foreign corporations doing business in Pennsylvania are included in the list of obligations made taxable under section 17, they are automatically removed from the application of the personal property tax imposed under section 1. A tax has been defined by the United States Supreme Court as "a pecuniary burden laid upon individuals or property to support the government": New Jersey v. Anderson, 203 U. S. 483 (1906). The attempt to levy a tax upon the bonds of a foreign corporation through a nonresident treasurer is an extraterritorial act and therefore unconstitutional and a nullity. Consequently, it cannot be said that such bonds have been "made taxable" under section 17, as no pecuniary burden has been placed upon them or the persons owning them. They cannot, in fact, be made taxable under this section, and therefore, under the clear language of the statute, "are to be taxed under section 1 of the said act".

If the accountants' views were adopted, residents of Pennsylvania could relieve themselves from liability for payment of personal property taxes by purchasing bonds of corporations of other States doing business in this State but not having resident treasurers. This would discourage residents from purchasing the bonds of Pennsylvania corporations and would give a decided preference to foreign corporations. Such a conclusion would result in an unfair and harmful discrimination against the industries of this State. We cannot believe that the legislature contemplated or intended such a result.

We are therefore of the opinion that the exceptions of the City and County of Philadelphia should be sustained.

. . . . . . . . .

The Act of June 22, 1935, P. L. 414, under which the claim of the Commonwealth is made, expressly provides,

in section 23 thereof, that it shall not have any effect upon the Act of 1913 or its amendments. It was a temporary measure intended to increase State revenues by raising the rate of the corporate loan tax from 4 to 5 mills. At the same time the personal property tax was increased in like amount, the additional 1 mill being added for State purposes. This act, as originally adopted, covered only two years, 1935 and 1936.

The Act of July 17, 1936, P. L. 51, was intended to continue the Act of 1935 in effect for an additional period of two years and also to increase the rate of the corporate loans tax for the years 1936, 1937, and 1938 to 8 mills and the personal property tax for State purposes from 1 mill to 4 mills. It likewise contained an express provision that it was to be so construed as to neither repeal nor modify the Act of 1913.

The Act of May 18, 1937, P. L. 633, made further changes in the system of personal property taxation, but since no claim was made under the provisions of this act it need not be discussed in this opinion.

Sections 3 of the Acts of 1935 and 1936, supra, are substantially the same as section 1 of the Act of 1913, the legislature having adopted virtually the same language as is found in the earlier act. Section 19 of the Act of 1935 and section 18 of the Act of 1936 are likewise substantially the same as section 17 of the Act of 1913.

It therefore follows that the bonds in question are taxable for State purposes under section 3 of the Act of 1935, supra, and section 3 of the Act of 1936, supra, for the same reasons that they are subject to the personal property tax under section 1 of the Act of 1913, supra.

The exceptions of the Commonwealth of Pennsylvania are therefore sustained.

The claims of the City of Philadelphia and the Commonwealth of Pennsylvania are therefore allowed in the amounts and for the years set forth in the stipulation of

the parties. Subject to these modifications, the supplemental adjudication is confirmed absolutely.

Sinkler, J., dissents.